[No. F060582. Fifth Dist. Nov. 4, 2011.]

ROSA ELIA SANCHEZ et al., Plaintiffs and Appellants, v.
RANDALL ALAN STRICKLAND et al., Defendants and Respondents;
RAFAEL MADRIZ, Plaintiff and Respondent.

JESUS BAUTISTA et al., Plaintiffs and Respondents, v.
RANDALL ALAN STRICKLAND et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II. of the Discussion.

## COUNSEL

Hinton, Alfert & Sumner, Hinton, Alfert, Sumner & Kaufmann, Scott H.Z. Sumner, Elise R. Sanguinetti; Demas & Rosenthal and John Demas for Plaintiffs and Appellants.

No appearance for Plaintiffs and Respondents.

Matheny Sears Linkert & Jaime, Matthew C. Jaime and Andrea M. Christensen for Defendants and Respondents.

## OPINION

**DAWSON, J.**—In this personal injury lawsuit, the trial court granted a motion reducing the jury's award of past medical expenses from the amount billed by the medical providers to the amount actually paid to the providers under Medicare and Medi-Cal. Three of the plaintiffs appealed, contending the trial court misapplied California's collateral source rule when it reduced the damages to reflect the difference between the amount billed by medical providers and the amount they accepted as payment under Medicare. Plaintiffs did not challenge the reduction in damages related to payments made under Medi-Cal.

Defendants contend the appeal must be dismissed as untimely and, alternatively, the trial court correctly extended *Hanif v. Housing Authority* (1988) 200 Cal.App.3d 635 [246 Cal.Rptr. 192] (*Hanif*) to bills covered by Medicare. In *Hanif*, the appellate court reduced the jury's award of past medical expense from the amount billed to the amount paid under Medi-Cal.

In the unpublished portion of this opinion, we conclude this case is governed by the California Supreme Court's recent decision, *Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541 [129 Cal.Rptr.3d 325, 257 P.3d 1130] (*Howell*), which held that a plaintiff may not recover as past medical expenses the difference between (1) the medical providers' full billings for the medical care and services supplied to the plaintiff and (2) the amounts the medical providers have agreed to accept from the plaintiff's private insurer as full payment. We conclude this holding concerning private insurance applies with equal force to Medicare. Therefore, the trial court correctly reduced the damages awarded to reflect the amounts paid under Medicare to satisfy the medical bills.

The published parts of this opinion address two points. First, the timeliness of the appeal from the amended judgment is determined under the substantial

modification test. We conclude that the amended judgment contained a substantial modification and, therefore, the appeal was timely. Second, we conclude that the limitation on recovery set forth in *Howell* does not extend to amounts gratuitously written off by a medical provider. Therefore, we will modify the judgment to include an appropriate adjustment for $7,020 gratuitously written off by a medical provider in this case.

## FACTS AND PROCEEDINGS

In October 2005, Pedro Hueso was driving his 1990 Lincoln Town Car on State Route 120 when it collided with an International truck hauling two semitrailers. The truck-trailer combination was owned by Diestel Turkey Ranch and operated by Randall Alan Strickland (collectively, defendants).

Pedro Hueso's wife and another passenger, Rebeca Madriz Carbajal, died as a result of the collision. Pedro Hueso spent approximately four months in the hospital recovering from his injuries. Approximately six weeks after his release from the hospital, he died of heart failure.

In October 2007, seven plaintiffs sued defendants. Plaintiffs included Pedro Hueso's two daughters, for themselves and in their capacity as representatives of his estate,[1] and the deceased passenger's brother and sister. Among other things, plaintiffs sought to recover the economic damages, which included medical expenses, of Pedro Hueso.

The jury trial began in mid-September 2009. On October 6, 2009, the jury returned a verdict. The completed verdict form included the jury's findings that (1) defendants were negligent, (2) the negligence was a substantial factor in causing harm to plaintiffs, and (3) the negligence was a substantial factor in causing Pedro Hueso's death. The jury awarded damages totaling $3,115,569, of which $1,339,569 represented the past medical expenses of Pedro Hueso. The jury also found that the driver of the truck was 5 percent responsible for plaintiffs' harm, Diestel Turkey Ranch was 65 percent responsible, and Pedro Hueso was 30 percent responsible.

Defendants filed a motion for adjustment or reduction of verdict amounts. The motion sought, among other things, to reduce the amount awarded for Pedro Hueso's past medical expense to the actual amounts paid or owed to the medical providers and then to reduce that amount by Pedro Hueso's comparative fault. Defendants asserted that the amount of Pedro Hueso's medical bills paid or still owing totaled approximately $240,000. After

---

[1] For convenience, this opinion will refer to the award of damages to Pedro Hueso's estate or to the representatives of the estate as an award to Pedro Hueso.

reducing that amount for comparative fault, defendants argued the award for Pedro Hueso's past medical expenses should have been approximately $169,000.

In January 2010, the trial court heard the motion to reduce the verdict. On March 24, 2010, the trial court filed an order on matter submitted, which granted the motion. The contents of this order, the original judgment, and the amended judgment are discussed in part I.A., *post*.

On June 28, 2010, plaintiffs filed a notice of appeal.

In August 2010, defendants filed a motion to dismiss the appeal, asserting the notice of appeal was not filed within the time prescribed by California Rules of Court, rule 8.104. Plaintiffs filed an opposition to the motion to dismiss.

In September 2010, this court filed an order stating that consideration of the motion to dismiss would be deferred and treated as a threshold issue when the court considered the appeal on its merits.

## DISCUSSION

### I. *Motion to Dismiss Untimely Appeal*

■ Under California law, if an appeal is untimely, the appellate court has no jurisdiction to consider its merits and the appeal must be dismissed. (Cal. Rules of Court, rule 8.104(b); *Estate of Hanley* (1943) 23 Cal.2d 120, 123 [142 P.2d 423] [court has no discretion to consider untimely appeal].)

Defendants contend that plaintiffs' notice of appeal was untimely and, under the foregoing rule, this court must dismiss the appeal.

#### A. *Background Facts*

On October 6, 2009, the jury rendered its decision by completing the verdict form provided. The jury awarded Pedro Hueso $1,339,569 in damages for past medical expenses and also awarded damages to the six individual plaintiffs. Defendants filed a motion to reduce or adjust the verdict amounts. The trial court tentatively ruled that the past medical expenses awarded to Pedro Hueso would be reduced to $242,660.78, which the court found was the actual amount of medical expenses paid by him or on his behalf, or that were still legally owed to his providers. Plaintiffs responded to the tentative ruling by requesting argument, and the trial court heard the motion in January 2010.

On March 24, 2010, the trial court filed an order on submitted matters that addressed four primary issues: (1) Whether to adjust the verdict amounts awarded individual plaintiffs because of the jury's determination that Pedro Hueso's comparative fault was 30 percent. (2) Whether to adjust the verdict amounts for past medical expenses to reflect payments from other sources. (3) Whether to adjust the verdict amounts due to settlements outside the trial. (4) What costs, if any, of the prevailing parties are subject to being taxed. The order discussed the first two issues as follows: "The jury determined . . . Pedro Hueso to be 30% at fault for the accident. His economic damages, when determined, will be reduced by that percentage of fault. [¶] The economic damages awarded to remaining Plaintiffs are not reduced because of comparative fault. Their economic damages may be reduced because of the source of medical expense payments, as may Pedro Hueso's."

The trial court discussed the reduction of an award of past medical expenses that occurred in *Hanif, supra*, 200 Cal.App.3d 635 as well as a case involving private insurance that did not allow a postverdict reduction. The court noted that the Supreme Court had granted review of the latter case and, thus, it was no longer citable authority. It also stated Pedro Hueso's Medicare coverage was not the equivalent of private insurance. Consequently, the trial court's order reduced the damages awarded to Pedro Hueso to $242,660.78.

On April 7, 2010, the trial court filed a judgment on verdict in open court. Pages 2 through 9 of the judgment reflected the jury's answers to the questions presented in the verdict form. These answers included the jury's finding that Pedro Hueso's past medical expenses were $1,339,569. Immediately following the jury's answers, the judgment stated:

"The Court set a further hearing for January 14, 2010 on the issues of adjustment and apportionment and the matter was submitted to the Court on January 15, 2010. [¶] On March 24, 2010, the Court issued its ruling on the issues of adjustment and apportionment as follows: ·

"Defendants are liable to each of the following plaintiffs in the dollar amounts as shown for both economic and non-economic damages:

"Pedro Hueso $242,660.78"

Below this entry for Pedro Hueso, the judgment listed the other six plaintiffs and the amount awarded to each of them. The total adjusted liability was $1,251,443.18 The dollar amounts set forth in the judgment for each individual plaintiff were consistent with the dollar amounts set forth in the trial court's March 24, 2010, order on submitted matters.

When defendants reviewed the judgment, they believed it contained an error because the award to Pedro Hueso for past medical expenses had not

been reduced by his 30 percent comparative fault. Defense counsel sent a letter to plaintiffs' counsel about the absence of a reduction for comparative fault. Plaintiffs' attorney responded with an e-mail stating he agreed that defense counsel "d[id] not need to file a motion to correct this oversight." As a result, defense counsel sent the trial court a letter describing the perceived error and an amended order on submitted matters.

On April 28, 2010, the trial court filed the amended order on submitted matters as well as an amended judgment on verdict in open court. This amended order stated that defendants were liable to Pedro Hueso for damages in the amount of $169,862.55 (70 percent of the $242,660.78 stated in the original order and judgment). Similarly, the amended judgment reduced the amount awarded to Pedro Hueso to $169,862.55. The awards to the six individual plaintiffs remained the same.

In summary, the amended judgment of April 28th changed the April 7th judgment by reducing the amount awarded to Pedro Hueso from $242,660.78 to $169,862.55. This $72,798.23 reduction is the only change relevant to the issues concerning the timeliness of this appeal.

### B. Contentions of the Parties

Defendants' contention that the notice of appeal was untimely is based on the theory that the $72,798.23 reduction did not substantially modify the April 7th judgment and, therefore, the amended judgment did not restart the 60-day period for filing a notice of appeal.

In response, plaintiffs argue that the April 28, 2010, amended judgment substantially changed the original judgment and that the amendment was not merely a correction of a clerical error.

### C. Applicable Rules of Law

In this case, the question of timeliness depends upon whether the 60-day period for filing the notice of appeal began when the original judgment was served (Apr. 7th) or when the amended judgment was served (Apr. 28th). (See Cal. Rules of Court, rule 8.104(a) [notice of appeal must be filed within 60 days after service of "notice of entry" or a file-stamped copy of judgment].) Thus, the first question of law presented is what test should be applied to determine whether the amended judgment or the original judgment commenced the 60-day period for filing the notice of appeal.

■ The most recent published decision of the Courts of Appeal to address this question is *Dakota Payphone, LLC v. Alcaraz* (2011) 192

Cal.App.4th 493 [121 Cal.Rptr.3d 435] (*Dakota Payphone*). There, the court concluded that the appropriate test was whether the amended judgment resulted in a *substantial modification* of the original judgment. (*Id.* at p. 504.) We concur in the conclusion that the substantial modification test should be used to determine whether an amended judgment restarts the 60-day period for filing a notice of appeal. If a substantial modification was made, the period restarts.

After identifying the appropriate test, the court in *Dakota Payphone* discussed two lines of cases. One line held "that postjudgment awards of attorney fees, costs and interest are separately appealable matters collateral to the actual judgment if they are not included therein." (*Dakota Payphone, supra*, 192 Cal.App.4th at p. 505.) With regard to this line of cases, the court in *Dakota Payphone* stated: "[I]t makes sense to conclude that a separately appealable order after final judgment does not substantially modify the judgment itself for purposes of computing the time in which to file a notice of appeal. Any problem the parties might have with the amendment can be pursued through a separate appeal of the postjudgment order." (*Ibid.*)

For purposes of this appeal, we will refer to the rule established by this line of cases as the "separately appealable order" rule.

The second line of cases discussed by the court in *Dakota Payphone* involved modifications to the judgment that were not the result of a separately appealable order. Those cases defined the term "substantial modification" to mean "one materially affecting the rights of the parties." (*Dakota Payphone, supra*, 192 Cal.App.4th at p. 505; see *Stone v. Regents of University of California* (1999) 77 Cal.App.4th 736, 744 [92 Cal.Rptr.2d 94] [amendment adding nine months of defense costs to the judgment materially affected the rights of the losing party]; *CC-California Plaza Associates v. Paller & Goldstein* (1996) 51 Cal.App.4th 1042, 1049 [59 Cal.Rptr.2d 382] ["we cannot imagine a more substantial or material change in the form of the judgment than in the identity of the losing party"].)

Based on *Dakota Payphone* and the two lines of cases discussed in that decision, we will consider whether plaintiffs' notice of appeal was timely under either the "separately appealable order" rule or the rule that a modification materially affecting the rights of the parties is substantial and thus restarts the time in which to appeal.

█ In their appellate papers, the parties have presented arguments concerning whether the amendment in this case corrected a clerical error. Like the court in *Dakota Payphone*, we conclude that the question of clerical error versus judicial error does not resolve the issue whether a substantial modification occurred. (*Dakota Payphone, supra*, 192 Cal.App.4th at p. 506.)

Furthermore, we reject the proposition that all changes correcting clerical errors in judgments are insubstantial or immaterial.

The following hypothetical demonstrates that some clerical errors can lead to substantial modifications of a judgment. Suppose a bench trial is held and both defendants claim the other is responsible for the product that injured the plaintiff. Suppose further that the trial court intends to find that the defendant Westside Co. is liable and the defendant Eastside Co. has no liability, but it transposes their names in the judgment so that Eastside Co. is liable to the plaintiff for $1 million and Westside Co. has no liability. Also suppose nearly two months pass before the trial court recognizes its error and files an amended judgment implementing its original intention to hold the defendant Westside Co. solely liable for the plaintiff's damages. In this hypothetical, it is obvious that the rights of both defendants were materially affected when the trial court corrected its clerical error, and it would be unfair to the defendant Westside Co. to have only a few days after the correction to file a notice of appeal. Indeed, a rule of law that did not restart the time in which Westside Co. could file a notice of appeal might run afoul of its procedural due process rights.

We are aware that dicta in *Torres v. City of San Diego* (2007) 154 Cal.App.4th 214, 222 [64 Cal.Rptr.3d 495] suggests clerical errors have a role in determining whether to restart the period for filing a notice of appeal: " 'The effect of an amended judgment on the appeal time period depends on whether the amendment substantially changes the judgment or, instead, simply corrects a clerical error.' (Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 2006) ¶ 3:56, pp. 3-24 to 3-25.)"

We reject this dichotomy because, as illustrated by the hypothetical, some corrections of clerical errors will substantially change the judgment. Also, all insubstantial changes to judgments do not necessarily involve the correction of clerical errors.

D. *Application of Rules*

1. *"Separately appealable order" rule*

The April 28, 2010, amended judgment was not the result of a separately appealable order. The change made did not implement a postjudgment order awarding attorney fees, costs, interest, or some other matter collateral to the original judgment. Instead, the change reduced the amount of damages awarded to Pedro Hueso for past medical expenses, a subject the original judgment attempted to address fully. Because the reduction in damages was not accomplished through a separately appealable order, the "separately

appealable order" rule does not apply and, thus, does not prevent the 60-day period for filing an appeal from being restarted by the amended judgment.

### 2. *Modification materially affecting rights of the parties*

We conclude that the modification materially affected the rights of the parties and, therefore, was a substantial modification that restarted the 60-day period for filing a notice of appeal. The modification altered the rights of the parties because it implemented the trial court's conclusion that the award to Pedro Hueso should be reduced to reflect his comparative fault. The comparative fault reduction in damages reflected a new legal ground (i.e., a new factor) not used to calculate the amount actually awarded. This new factor materially altered Pedro Hueso's rights of recovery because it changed the formula used to calculate damages.

Furthermore, from a quantitative perspective, a reduction of an award by 30 percent or, in absolute terms, by $72,800, is material. Thus, the situation presented is not one where the respective legal rights and duties omitted from the original judgment resulted in only a trivial or de minimis change in the amount of the amended judgment. (Civ. Code, § 3533 [a maxim of jurisprudence is that "[t]he law disregards trifles"].)

Based on our conclusion that the amended judgment contained a substantial modification, it follows that plaintiffs' notice of appeal was timely.

### II. *Collateral Source Rule and Medicare Benefits**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III. *Gratuitous Writeoffs by a Medical Provider*

#### A. *Facts*

The last issue in this case concerns $7,020 gratuitously written off by Vibra Healthcare for services provided to Pedro Hueso at Kentfield Rehabilitation & Specialty Hospital. A declaration of Vibra Healthcare's operations manager indicates that it (1) charged $113,988.58 for the treatment provided to Pedro Hueso, (2) billed Medicare as the primary payor, and (3) received $66,704 from Medicare as payment with a $40,264.58 contract allowance. The declaration also states that Vibra Healthcare "billed the remaining $7,020.00 to Medi-Cal, but wrote off that amount, as we were not contracted with Medi-Cal."

---

*See footnote, *ante,* page 758.

## B. *Rule of Law and Its Application*

In *Howell*, the California Supreme Court stated that the Restatement Second of Torts reflects the widely held view that the collateral source rule applies to gratuitous payments and services, but that California law was less clear on the point. (*Howell, supra*, 52 Cal.4th at pp. 557–558; see Rest.2d Torts, § 920A, com. c, subd. (3), p. 515.) The court also stated that the case presented did not require it to decide the question concerning gratuitous writeoffs. Nevertheless, the court discussed whether its holding was inconsistent with a rule of law that would allow a plaintiff to recover the reasonable value of service rendered gratuitously and stated: "We see no anomaly, even assuming we would recognize the gratuitous-services exception to the rule limiting recovery to the plaintiff's economic loss. The rationale for that exception—an incentive to charitable aid (*Arambula v. Wells*[ (1999)] 72 Cal.App.4th [1006,] 1013 [85 Cal.Rptr.2d 584])—has, as just explained, no application to commercially negotiated price agreements like those between medical providers and health insurers. Nor, as discussed below, does the tort law policy of avoiding a windfall to the tortfeasor suggest the necessity of treating the negotiated rate differential as if it were a gratuitous payment by the medical provider." (*Howell, supra*, 52 Cal.4th at p. 559.)

In *Hanif*, the court quoted a comment to the version of BAJI No. 14.10 then in effect for the proposition that the reasonable value of medical care may be recovered even though rendered gratuitously. (*Hanif, supra*, 200 Cal.App.3d at p. 641.) The court regarded the comment as restating the collateral source rule and indicated the particular issue presented to it concerned the "reasonable value" of past medical services, which was distinct from the issue regarding gratuitously rendered services. (*Ibid.*) Thus, the court in *Hanif* recognized the existence of a rule of law that allowed the recovery of the value of gratuitously provided medical services, but that rule of law was not employed by the court in reaching its decision.

In contrast to *Hanif*, the court in *Arambula v. Wells, supra*, 72 Cal.App.4th 1006 (*Arambula*) was required to determine how the collateral source rule applied to gratuitous payments received by a plaintiff. In *Arambula*, the plaintiff was injured in an automobile accident caused by the defendant and was unable to work. The plaintiff's employer was a corporation in which his brother owned 70 percent of the stock, his parents owned 15 percent, and the plaintiff owned 15 percent. (*Id.* at p. 1008.) The employer continued to pay the plaintiff's salary even though he was not able to work. (*Ibid.*) In the personal injury lawsuit against the other driver, the plaintiff sought to recover lost earnings. The trial court instructed the jury not to award damages for lost earnings because the plaintiff's employer paid him for the time he was off work. (*Id.* at p. 1009.) The appellate court disagreed with the trial court's

ruling and remanded for a limited new trial to determine the amount of damages for lost wages. (*Id.* at p. 1016.) The appellate court determined that allowing the recovery of gratuitous payments and services was consistent with the majority view of the collateral source rule and furthered the policy of encouraging charitable action. (*Id.* at p. 1013.)

■ Based on the discussion of gratuitous payments and services in *Howell*, *Hanif*, and *Arambula* as well as the view contained in the Restatement Second of Torts, we adopt the following rule of law: Where a medical provider has (1) rendered medical services to a plaintiff, (2) issued a bill for those services, and (3) subsequently written off a portion of the bill gratuitously, the amount written off constitutes a benefit that may be recovered by the plaintiff under the collateral source rule.

Under this rule of law, the $7,020 written off by Vibra Healthcare for medical services provided to Pedro Hueso at Kentfield Rehabilitation & Specialty Hospital is recoverable as damages because that amount was included in the past medical expenses awarded by the jury. Pedro Hueso's recovery related to the writeoff must be reduced by the 30 percent of the fault apportioned to him. Accordingly, we will modify the amended judgment so that the award of $169,862.55 in damages to Pedro Hueso is increased by $4,914 (i.e., $7,020 x 70 percent) and becomes $174,776.55.

## DISPOSITION

The amended judgment is modified so that the award of $169,862.55 to Pedro Hueso is increased to $174,776.55. As modified the judgment is affirmed. Each party is to bear its own costs on appeal.

Cornell, Acting P. J., and Detjen, J., concurred.