Filed 12/16/13  MB Urban Properties v. Lankford & Assocs. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| MB URBAN PROPERTIES, LLC, et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> LANKFORD & ASSOCIATES, INC., et al., <br><br> Defendants and Respondents. | D061297 <br><br><br> (Super. Ct. No. 37-2010-00090082-CU-CTL) |

APPEALS from a judgment and an order of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Affirmed.

Aguirre, Morris & Severson, Michael J. Aguirre, Christopher S. Morris and Maria C. Severson for Plaintiffs and Appellants.

Higgs, Fletcher & Mack, John Morris, Victoria E. Fuller and Thomas W. Ferrell for Defendants and Respondents.

This appeal is brought by Michael Blumenthal; Tamer Salameh; MB Urban Properties, LLC; and IB4B, Inc. (collectively Plaintiffs) after a verdict against them in

their lawsuit alleging fraud and breach of contract against Lankford & Associates, Inc.; Robert V. Lankford (hereinafter, "Mr. Lankford"); Lankford Marketplace, LLC (hereinafter "Marketplace LLC"); Lankford Investments, LLC; and CJUF II Lankford Market LLC (hereinafter "CJUF II")[1] arising out of Plaintiffs' investment in a real estate development venture.

Plaintiffs contend that (1) the trial court should have granted their motion for a new trial based on an allegedly prejudicial comment made by opposing counsel during closing argument; and (2) the trial court erred in awarding attorney fees.

Defendants have filed a motion to dismiss the appeal from the judgment as untimely, which we consider below.

We conclude (1) that the motion to dismiss the appeal is without merit and (2) that Plaintiffs have set forth no meritorious basis for reversal. Accordingly, we affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs and Defendants were involved in a venture to develop a parcel of real estate in downtown San Diego into a mixed-use high-rise building containing condominiums, retail space and parking (the Project). Plaintiffs obtained an interest in

---

[1] When referring collectively to defendants Lankford & Associates, Inc.; Robert V. Lankford; Marketplace, LLC; Lankford Investments, LLC; and CJUF II, we will refer to them as "Defendants."

the Project in 2006 when MB Urban Properties, LLC and IB4B, Inc.[2] contributed the lot on which the Project was to be built (the Real Property) in exchange for a payment of $16.5 million and a credit of $5.5 million in the form of a capital contribution to Marketplace LLC, in which they became members. Lankford & Associates, Inc. — the other member of Marketplace LLC — made a $1 million capital contribution and acted as its managing member.[3]

In turn, Marketplace LLC became a member of CJUF II Lankford Market LLC (hereinafter, "CJUF II"), along with another entity, Canyon Johnson Urban Fund II, L.P., which was to make a $30.4 million capital contribution. The stated purpose of CJUF II in its operating agreement was to develop the Project. Marketplace LLC was identified in the operating agreement as the "operator" of CJUF II, responsible for the day-to-day activities of the company.

Plaintiffs became dissatisfied with Defendants because the Project was ultimately never developed and Plaintiffs obtained no financial gain from their investment.

Plaintiffs filed suit against Defendants, alleging (1) securities fraud (Corp. Code, §§ 25401, 25501, 25504); (2) fraud and deceit; (3) breach of contract; (4) breach of the covenant of good faith and fair dealing; (5) breach of contract (rescission); (6) breach of fiduciary duty; and (7) declaratory relief. The declaratory relief cause of action sought a

[2]    The operative complaint alleged that Salameh owned IB4B, Inc., and Blumenthal owns MB Urban Properties, LLC.

[3]    According to the operative complaint, Robert Lankford is the president and sole owner of Lankford & Associates, Inc.

3

declaration regarding the parties' rights and duties under a provision in the CJUF II operating agreement concerning Marketplace LLC's right, in certain circumstances, to repurchase the Real Property.

The case proceeded to a jury trial on all of the causes of action except declaratory relief, and the jury returned a verdict against Plaintiffs on each of cause of action presented to it.

Defendants submitted a proposed judgment to the trial court, reciting the jury's verdict and dismissing the declaratory relief cause of action on the ground that "[p]laintiffs presented no evidence during the trial of this matter pertaining to the declaratory relief sought in the Seventh Cause of Action[,]" and "made no argument to the Court addressing that cause of action."

The trial court entered the proposed judgment, as submitted, on June 24, 2011. The judgment indicated that the amount of costs and attorney fees to be awarded to Defendants was still to be determined. Defendants served notice of entry of judgment on Plaintiffs on June 28, 2011.

Even though the declaratory relief cause of action was dismissed in the June 24, 2011 judgment, Plaintiffs filed an ex parte application to obtain a briefing schedule and set a hearing date to resolve the declaratory relief cause of action. At the June 28, 2011 ex parte hearing, counsel for Plaintiffs explained that although he was "concerned" that the judgment had already been entered against Plaintiffs on the declaratory relief cause of action, he was nevertheless seeking a statement of decision in Plaintiffs' favor on the declaratory relief cause of action and would like the court to set a briefing schedule in

4

connection with that issue.[4]  Plaintiffs' counsel also made clear that he would be filing a motion for a new trial and a judgment notwithstanding the verdict (JNOV) on other grounds.  The trial court stated at the ex parte hearing, "Sounds like the best we're going to be able to do here today is to set this for the time of post-trial motions so it can be fully briefed and decided when I have enough time to do that and give you a full hearing on it."

On July 11, 2011, Plaintiffs filed three motions:  (1) a motion for JNOV; (2) a motion for a new trial; and (3) "Plaintiffs' Motion for Findings of Fact and Conclusions of Law re Declaratory Relief Pursuant to [Code of Civil Procedure sections] 1060 and 632" (the posttrial declaratory relief motion).

The posttrial declaratory relief motion sought a declaration from the trial court that, pursuant to a contractual repurchase provision between the parties, the proceeds from a pending sale of the Real Property should be apportioned in a specific manner. Plaintiffs stated, "In order to accomplish this end, the existing judgment should be amended pursuant to [Code of Civil Procedure section 473, subdivision (d)] which allows the Court to amend any judgment to conform to proof.  In particular, that section of the

---

4    Prior to the start of the jury trial, the parties discussed with the trial court the procedure for resolution of the declaratory relief cause of action.  Plaintiffs' counsel suggested that "at the end of the case . . . the parties provide Your Honor with a proposed statement of decision . . . and you can have the benefit of doing that at the end of the case."  Counsel for Defendants agreed to that approach.  The agreed-upon procedure was not followed prior to the trial court's entry of judgment on June 24, 2011, which dismissed the declaratory relief cause of action for lack of evidence and argument from Plaintiffs at trial.

5

judgment stating that no evidence concerning the Declaratory Relief Cause of Action was presented at trial. This is simply not true."

Neither the motion for new trial nor the motion for JNOV sought relief regarding the declaratory relief cause of action. As relevant here, the sole ground for the new trial motion was counsel for Defendants' purported prejudicial statement during closing argument that Mr. Lankford was "'being sued to take his house away.'"

On August 19, 2011, the trial court issued a minute order ruling on the three posttrial motions. The trial court denied the motion for JNOV and the motion for a new trial.

In explaining its reasons for denying the motion for a new trial, the trial court stated that (1) Plaintiffs' counsel did not object to the allegedly prejudicial statement made by Defendants' counsel during oral argument and did not ask for a curative instruction, and thus waived the right to assert the issue as grounds for a new trial; and (2) the comment was factually accurate, was a single brief statement that was not part of a pattern of offensive conduct, and did not appeal to the sympathy of the jury, so that it was not prejudicial per se.

With respect to the posttrial declaratory relief motion, the trial court directed "both parties to submit proposed statements of decision within 30 days of the court's ruling herein."

Plaintiffs and Defendants submitted their proposed statements of decision on the declaratory relief cause of action within the 30-day time frame. Defendants responded to Plaintiffs' proposed statement of decision by filing an objection, which stated, among

6

other things, that "[g]ranting [P]laintiffs' request would require the Court to vacate that portion of the June 24, 2011 judgment" that dismissed the declaratory relief cause of action.

On November 9, 2011, the trial court issued a statement of decision on the declaratory relief cause of action. The trial court explained that in connection with the posttrial declaratory relief motion, "defendants' counsel resubmitted evidence previously provided to the court in connection with a pretrial motion to void a *lis pendens*" and "after having once again reviewed the evidence," the court "reaffirms its prior findings that plaintiffs have not presented evidence that they exercised their right to repurchase the property and have failed to prove entitlement to the relief sought in the seventh [declaratory relief] cause of action." The court stated that it "hereby reaffirms its dismissal of the seventh cause of action in its June 24, 2011 Judgment for the reasons stated herein," and "as a separate and alternative basis for the court's decision . . . , the court finds the totality of the evidence, much of which is uncontroverted, fails to prove by a preponderance of the evidence their entitlement to the relief sought."

Plaintiffs filed an ex parte application for entry of an amended judgment, which the court entertained at a December 7, 2011 hearing. Although counsel for Defendants objected to the entry of an amended order on the grounds that it would be the same as the June 24, 2011 judgment and the time to appeal from that judgment had already expired, the trial court explained that it would enter an amended judgment because counsel "didn't have the benefit of the court's reasoning" on the declaratory relief cause of action at the time of the June 24, 2011 judgment, and "[i]n not having the benefit of the court's

7

reasoning, having made a timely request for a statement of decision, they . . . couldn't frame their appeal. That's not fair." The trial court explained, "The idea isn't to cut off anybody's rights. It's to preserve everybody's rights to have a full and fair hearing on the merits and to have a full and fair hearing on the appeal." According to the trial court, "[t]here was nothing about the way in which the decision was rendered that should act to eliminate the plaintiffs' right to appeal. That's just not going to happen."

On January 5, 2012, the trial court entered a "Final Amended Judgment After Jury Verdict." The amended judgment recited the jury verdict and contained the following resolution of the declaratory relief cause of action:

> "Following the trial, the parties briefed and argued Plaintiffs' Seventh Cause of Action for Declaratory Relief. Following argument by counsel, the Court requested that each party submit a proposed statement of decision. After consideration of the evidence presented, the briefing of the parties, the arguments of counsel and the proposed statements of decision of each party, the Court entered its Statement of Decision Regarding Plaintiffs' Seventh Cause of Action For Declaratory Relief on November 9, 2011. The Court found that Plaintiffs had failed to prove the entitlement to the relief sought in the Seventh Cause of Action and declined to give the interpretation of the contract urged by Plaintiffs. The Court therefore denied the relief sought by plaintiffs in their seventh cause of action."

Plaintiffs filed a notice of appeal from the amended judgment on January 24, 2012.

On April 26, 2012, the trial court granted Lankford & Associates, Inc.'s motion for attorney fees, awarding it $466,440.32. On May 14, 2012, Plaintiffs filed an appeal from the order awarding attorney fees to Defendants.

8

II

DISCUSSION

A.  *The Motion to Dismiss the Appeal*

We first address Defendants' motion to dismiss the appeal.

Defendants argue that the appeal from the judgment must be dismissed as untimely.[5]  According to Defendants, the time to appeal started running from the entry of the June 24, 2011 judgment rather than from the entry of the January 5, 2012 amended judgment.  As the time to file an appeal from the June 24, 2011 judgment expired 30 days from the trial court's August 22, 2011 service of its ruling denying the motion for new trial and motion for JNOV, i.e., on September 21, 2011, Defendants contend that Plaintiffs' January 24, 2012 notice of appeal was untimely.

As an initial matter, we agree with Defendants that *if* Plaintiffs were required to appeal from the June 24, 2011 judgment, the deadline for filing that appeal would be September 21, 2011.  Specifically, California Rule of Court,[6] rule 8.108 (b)(1) provides: "If any party serves and files a valid notice of intention to move for a new trial, the following extensions of time apply:  [¶]  (1) If the motion for a new trial is denied, the

_____

5      As we understand Defendants' motion to dismiss the appeal, it pertains only to the notice of appeal from the amended judgment, not from the notice of appeal of the posttrial order awarding attorney fees.  The appeal from the attorney fee order was timely filed on May 14, 2012, within 60 days of the April 26, 2012 service of the order.  (See Code Civ. Proc., § 904.1, subd. (a)(2) [a postjudgment order awarding attorney fees is separately appealable]; Cal. Rules of Court, rule 8.104 (a), (e) [60-day deadline from date of service to appeal from an appealable postjudgment order].)

6      All further rule references are to the California Rules of Court.

time to appeal from the judgment is extended for all parties until the earliest of: [¶] (A) 30 days after the superior court clerk, or a party serves an order denying the motion or a notice of entry of that order; [¶] (B) 30 days after denial of the motion by operation of law; or [¶] (C) 180 days after entry of judgment." Rule 8.108 (d)(1) provides for the same deadlines after a denial of a JNOV motion, i.e., the *earliest* of 30 days after service of the order denying the motion, 30 days after denial of the motion by operation of law, or 180 days after entry of judgment. Here, the superior court clerk served the order denying the motion for a new trial and motion for JNOV on August 22, 2011. Thus, the earliest of the three deadlines set forth in rule 8.108 (b)(1) and (d)(1) was September 21, 2012, which was 30 days from the date the clerk served the order.

The dispositive question, however, is whether Plaintiffs were required to appeal from the June 24, 2011 judgment, or if — instead — a new appeal period began upon entry of the amended judgment. The general rule is that if an amendment to a judgment makes a substantive change, the right to appeal restarts from the entry of the amended judgment. If the amendment amounts "'to a *substantial modification* of the judgment . . . , the amended judgment supersedes the original and becomes the appealable judgment'" and "'a new appeal period starts to run from notice of entry or entry of the *amended* judgment.'" (*Torres v. City of San Diego* (2007) 154 Cal.App.4th 214, 222.)

A "'substantial modification' . . . mean[s] 'one materially affecting the rights of the parties.'" (*Sanchez v. Strickland* (2011) 200 Cal.App.4th 758, 765 (*Sanchez*).) The focus is on "whether there is a substantial change in the rights of the parties such that allowing an amendment nunc pro tunc (relating back to the original judgment) would unfairly

10

deprive them of the right to contest the issue on appeal or otherwise." (*Dakota Payphone, LLC v. Alcaraz* (2011) 192 Cal.App.4th 493, 506-507 (*Dakota Payphone*).)[7] "[I]t is ultimately the parties' ability to challenge the ruling that is key . . ." in determining whether there has been a substantial modification to the judgment, as it has "generally been held unfair to the parties to allow the trial court to make a change that they cannot, thereafter, challenge." (*Dakota Payphone*, at pp. 507, 508.) Thus, for example, when an amendment to a judgment reflected "a new legal ground" for the decision, it was a substantial modification, because the party would not have been able to frame an appeal from that ruling if it had appealed from the original judgment. (*Sanchez*, at p. 767.)

In this case, although the amended judgment reached the same result on the declaratory relief cause of action as the original judgment in that both of them resolved

---

7      Although some of the case law approaches the issue of whether an amendment was substantial by examining whether the amendment was merely to correct a clerical error, we agree with the recent case law rejecting that approach as overly simplistic. As the court stated in *Sanchez*, *supra*, 200 Cal.App.4th 758, agreeing with the analysis in *Dakota Payphone*, *supra*, 192 Cal.App.4th at page 506, "[t]he question of clerical error versus judicial error does not resolve the issue whether a substantial modification occurred. [Citation.] Furthermore, we reject the proposition that all changes correcting clerical errors in judgments are insubstantial or immaterial. [¶] . . . [¶] . . . Also, all insubstantial changes to judgments do not necessarily involve the correction of clerical errors." (*Sanchez*, at pp. 765-766.) As an apt example, *Sanchez* posed a hypothetical in which the names of a liable defendant and not-liable defendant were transposed in the judgment due to a clerical mistake, with the error corrected in an amended judgment. (*Id.* at p. 766.) As *Dakota Payphone* clarifies, "[T]he question whether a trial court has the ability to amend and under what circumstances it may amend a judgment is a different question than what effect any such modification might have on the time in which to appeal from the judgment. Thus, the question of 'clerical error' versus 'judicial error' does not resolve the issue" of the time to appeal from the judgment. (*Dakota Payphone*, at p. 506.)

11

that cause of action against Plaintiffs, different legal grounds were set forth in the two judgments. The original judgment simply based its dismissal of the declaratory relief cause of action on the purported failure of Plaintiffs to present evidence or argument pertaining to that cause of action. However the amended judgment set forth a resolution on the merits, referring to the trial court's consideration of the evidence and arguments of counsel, as reflected in the statement of decision. The amended judgment stated that "Plaintiffs had failed to prove the entitlement to the relief sought in the Seventh Cause of Action" and explained that the court had "declined to give the interpretation of the contract urged by Plaintiffs." Because the amended judgment contained a completely different legal basis for resolving the declaratory relief cause of action against Plaintiffs, it contained a substantial modification from the original judgment, and it accordingly reset the time to appeal from the judgment.

Defendants contend that the trial court was without authority to enter the amended judgment. According to Defendants, we should therefore declare the amended judgment to be void and give no effect to it when calculating the timeliness of the appeal. We disagree for two reasons.

First, the authority that Plaintiffs cited to the trial court for amending the judgment was Code of Civil Procedure 473, subdivision (d), which states that "[t]he court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed, and may, on motion of either party after notice to the other party, set aside any void judgment or order." There is no deadline for an amendment of a judgment under this provision. "A

12

court of general jurisdiction has power after judgment, pending an appeal and even after affirmance of the judgment on appeal, and regardless of lapse of time, to correct clerical errors whether made by the court, clerk or counsel so that its records will conform to and speak the truth." (*Hennefer v. Butcher* (1986) 182 Cal.App.3d 492, 506 (*Hennefer*).)

Here, the trial court's amendment to the judgment constituted the correction of a clerical error under Code of Civil Procedure section 473, subdivision (d). "'"The term 'clerical error' covers all errors, mistakes, or omissions which are not the result of the exercise of the judicial function. If an error, mistake, or omission is the result of *inadvertence*, but for which a different judgment would have been rendered, the error is clerical and the judgment may be corrected to correspond with what it would have been but for the inadvertence."'" (*Aspen Internat. Capital Corp. v. Marsch* (1991) 235 Cal.App.3d 1199, 1204, italics added.) "The difference between judicial and clerical error rests . . . upon . . . whether 'it was the deliberate result of judicial reasoning and determination.'" (*Ibid.*)

A clerical error may include a provision in a judgment that was drafted by counsel and inadvertently approved by the trial court when it endorsed the proposed judgment. For example, in *Bowden v. Green* (1982) 128 Cal.App.3d 65 (*Bowden*), the trial court made a clerical error subject to correction under Code of Civil Procedure section 473, subdivision (d), when it signed a proposed judgment drafted by counsel providing that the defendants take nothing by way of their cross-complaint. (*Id.* at pp. 69, 74.) "If a trial judge through inadvertence or mistake signs an order different from that which he intended because of the error of an attorney draftsman, it may readily be corrected.

13

[Citation.] 'In these times busy judges must of necessity rely heavily upon the attorneys to prepare orders and judgments accurately so that they express that which was done at the trial and that which the judge had called for.'" (*Hennefer*, *supra*, 182 Cal.App.3d at p. 507.)

The record establishes that the trial court inadvertently entered judgment on the declaratory relief cause of action before issuing a statement of decision. We reach this conclusion based on: (1) the reporter's transcript of the pretrial proceedings, which shows that the parties clearly agreed that the trial court would resolve the declaratory relief cause of action after reviewing the parties' proposed statements of decision; (2) the fact that the proposed judgment the trial court signed was prepared and submitted by Defendants' counsel without an indication from the trial court that it had considered and ruled on the declaratory relief cause of action; and (3) the trial court's explanation, on the record, that it was entering an amended judgment because it did not intend to issue a final judgment on the declaratory relief cause of action without first making a ruling and giving the parties a statement of decision explaining its decision.[8] Because the trial court

---

[8] In explaining why it was entering an amended judgment, the trial court stated, "You'll recall during the trial, [Plaintiffs' counsel] requested a ruling and a statement of decision. Now he has one. Now he gets a judgment. Now you go off for appeal." As the court explained, it did not intend to enter a final judgment including the declaratory relief cause of action prior to issuing a statement of decision, as "[c]ounsel didn't have the benefit of the court's reasoning. In not having the benefit of the court's reasoning, having made a timely request for a statement of decision, they couldn't . . . frame their appeal. That's not fair."

The trial court's explanation of its intention in entering an amended judgment is important to our analysis of whether the amendment was to correct an inadvertent clerical error. "It is . . . settled that '[in] determining whether an error is clerical or judicial, great

14

inadvertently included the dismissal of the declaratory relief cause of action in the original judgment, that mistake constitutes a clerical error subject to correction under Code of Civil Procedure section 473, subdivision (d).

Second, even were we to decide that Code of Civil Procedure section 473, subdivision (d) is not applicable and that the trial court therefore acted outside of its authority in issuing the amended judgment, Plaintiffs' appeal would still be timely. As a leading treatise explains, under the applicable case law "[i]f an amended judgment is subsequently determined to be *void . . .* , the original judgment is reinstated[,]" and "the amended (though void) judgment is deemed to have *suspended* the time to appeal the original judgment; a *new* appeal period thus runs from the *date the original judgment was reinstated* (the date the amended judgment was declared void). In effect the reinstated judgment is treated as a *new judgment* for appeal purposes." (Eisenberg et al., Civil Appeals and Writs (The Rutter Group 2012) ¶ 3:57, p. 3-31, citing *In re Marriage of Micalizio* (1988) 199 Cal.App.3d 662, 671-672.) Thus, even if the amended judgment were declared void, Plaintiffs would still be deemed to have a timely appeal from the original judgment.

---

weight should be placed on the declaration of the judge as to his intention in signing the [judgment].' [Citation.] The rationale for that rule was succinctly stated by Witkin: 'Where the error is made by the judge it is seldom clear from the record or other extrinsic evidence whether the error is judicial or clerical; i.e., whether (a) he knowingly rendered a judgment without realizing that it was bad in law (judicial error), or (b) inadvertently or by mistake signed findings or a judgment or order which he did not intend to constitute his decision. The issue is one of the judge's intent, and the best evidence is the judge's own statement, either express or implied from the order of correction.'" (*Bowden*, *supra*, 128 Cal.App.3d at p. 71.)

15

In sum, we conclude that Plaintiffs' appeal from the January 5, 2012 judgment was timely, and Defendants' motion to dismiss is therefore without merit.

B.    *The Trial Court Did Not Err in Denying the Motion for a New Trial*

We now turn to Plaintiffs' contention that the trial court erred in denying its motion for a new trial.

As we have explained, the sole basis for Plaintiffs' motion for a new trial was a statement made by counsel for Defendants during closing argument, which Plaintiffs contend unfairly prejudiced them.  Specifically, in the course of explaining to the jury the difference between the five defendants — one of which was an individual and four of which were business entities — counsel for Defendants made the following comment:

> "Mr. Lankford has been sued as an individual, as a person.  He's being sued to take his house away, to take his personal assets away.  A business dispute made personal.  Suing him personally for his own money in his pocket.  I won't argue the evidence again about fraud, nondisclosure, breach of contract, who has control.  But if you find Mr. Lankford liable individually, that's his money.  That's his assets.
>
> "The next defendant is the company that he owns and runs, Lankford & Associates . . . .  That's his company.  If you find that entity liable for fraud or that entity liable for breach of contract, again that's Mr. Lankford."

Counsel for Defendants then proceeded to discuss the role played by the remaining three defendants, as business entities, in the transactions giving rise to the lawsuit.

Although Plaintiffs did not object to these comments during closing argument, did not ask the trial court to admonish the jury, and did not seek a mistrial, Plaintiffs argued for the first time in their motion for a new trial that that they were unfairly prejudiced by counsel's comments, requiring a retrial.  According to Plaintiffs, counsel for Defendants

16

committed misconduct in referring to Mr. Lankford's house being taken away, and "[t]his improper and prejudicial argument played to the sympathies of the jury, and prevented [Plaintiffs] from having a fair trial."

The trial court denied the motion for new trial on two main grounds: (1) Plaintiffs had not raised the objection during closing argument when it could have been corrected by an admonition to the jury; and (2) the comment was not unfairly prejudicial.

The authority for a new trial based on misconduct by opposing counsel during closing argument is "[s]ection 657, subdivision (1), of the Code of Civil Procedure[, which] provides that a new trial may be granted for an '[(i)rregularity] in the proceedings of the court, jury or adverse party . . . by which either party was prevented from having a fair trial.' It is well settled that misconduct of counsel is such an irregularity and a ground for new trial. [Citations.] It is also well settled that misconduct has often taken the form of improper argument to the jury . . . ." (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 870 (*Decker*).)

"[W]e review an order denying a new trial motion under the abuse of discretion standard." (*Santillan v. Roman Catholic Bishop of Fresno* (2012) 202 Cal.App.4th 708, 733.) "[A] trial judge is accorded a wide discretion in ruling on a motion for new trial and . . . the exercise of this discretion is given great deference on appeal." (*Decker*, *supra*, 18 Cal.3d at pp. 871-872.)

As we will explain, because Plaintiffs did not raise an objection at trial or ask for a curative instruction, they did not preserve their argument that Defendants' counsel committed misconduct during closing argument.

17

"Generally a claim of misconduct is entitled to no consideration on appeal unless the record shows a timely and proper objection and a request that the jury be admonished. The purpose of the rule requiring the making of timely objections is remedial in nature, and seeks to give the court the opportunity to admonish the jury, instruct counsel and forestall the accumulation of prejudice by repeated improprieties, thus avoiding the necessity of a retrial. . . . In the absence of a timely objection the offended party is deemed to have waived the claim of error through his participation in the atmosphere which produced the claim of prejudice." (*Horn v. Atchison, T. & S.F. Ry. Co.* (1964) 61 Cal.2d 602, 610, citations omitted.) Asserting misconduct for the first time in the context of a new trial motion does not preserve the issue for appeal; the objection and the request for a curative instruction must be made during trial. (*People v. Williams* (1997) 16 Cal.4th 153, 254-255.) Here, Plaintiffs did not object to counsel's comments during trial and did not request that the jury be admonished. Therefore, they may not assert misconduct by counsel during closing argument as a basis for reversal of the judgment.

Although acknowledging that they failed to object to counsel's allegedly prejudicial statement during trial, Plaintiffs contend that if misconduct by opposing counsel is sufficiently egregious, a party may be excused from the requirement to object during trial. In support of this argument, Plaintiffs cite *Hoffman v. Brandt* (1966) 65 Cal.2d 549. The citation does not support Plaintiffs' argument. In *Hoffman* the appellant *did* object at trial, but failed to request an admonition. *Hoffman* merely illustrates the well-established rule that in exceptional cases, where an admonition will not cure the misconduct, *a failure to request an admonition* does not serve as a waiver of a party's

appellate rights. (See *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 794-795 ["*In addition to objecting*, a litigant faced with opposing counsel's misconduct must also 'move for a mistrial or seek a curative admonition' . . . unless the misconduct is so persistent that an admonition would be inadequate to cure the resulting prejudice." (Italics added.)].) Here, Plaintiffs' fundamental problem is that *they failed to object at all*, and thus regardless of whether an admonition would have been effective, they have waived their right to assert misconduct as a basis for reversal of the judgment.

Further, we do not agree with Plaintiffs that this is a case in which an admonition would have been futile and could not have cured any prejudice from counsel's statement. The comment about Mr. Lankford possibly losing his house if he was found liable was an isolated comment that could have been addressed by the trial court in a simple admonition. If the trial court decided that the comment was unfairly prejudicial because it was not supported by the evidence or improperly played on the jury's sympathy, the trial court could have instructed the jury to disregard the statement as unsupported by the evidence at trial and not pertinent to the legal issues presented. "Except perhaps in cases of highly emotional or inflammatory language or reference to extremely prejudicial circumstances not in evidence, a jury must be deemed capable, if so instructed, of ignoring references to a litigant's personal or corporate virtues and confining itself to the merits of the case." (*Sabella v. Southern Pac. Co.* (1969) 70 Cal.2d 311, 320.) Here, the comment about Mr. Lankford's house being in jeopardy was not highly emotional or inflammatory, and we must therefore presume that the jury would have been able to

19

follow an instruction to disregard counsel's comments and focus on the evidence and legal issues presented.

In sum, we conclude that because Plaintiffs failed to object and request a curative admonition, they may not pursue appellate relief based on opposing counsel's purportedly prejudicial comments during closing argument.

C.      *The Challenge to the Attorney Fee Award Lacks Merit*

We next consider Plaintiffs' challenge to the award of attorney fees. Specifically, Plaintiffs contend that "[t]he trial court committed error when it awarded $466,440.32 in attorneys' fees and costs to Mr. Lankford." Plaintiffs contend that Mr. Lankford should not have been awarded attorney fees because, due to an indemnification agreement with a third party, he did not actually pay those fees himself. As we will explain, there are multiple flaws in Plaintiffs' argument.

The first problem with Plaintiffs' argument is that the attorney fee order is in favor of Lankford & Associates, Inc., not Mr. Lankford as an individual, and thus Plaintiffs' challenge to an award in favor of Mr. Lankford lacks any basis in the procedural history of this case. For several reasons, the record leaves no doubt that the attorney fee award was solely in favor of Lankford & Associates, Inc. First, the motion for attorney fees was brought solely by Lankford & Associates, Inc. Second, the trial court's original and amended judgment both identified Lankford & Associates, Inc., but not the other Defendants, as being entitled to "statutory prevailing party fees" in an amount to be determined. Finally, the two contracts containing the attorney fee provisions forming the basis for attorney fee motions under Civil Code section 1717 were entered into by

20

Lankford & Associates, Inc., not the other Defendants. As Lankford & Associates, Inc. was the only party that recovered $466,440.32 in attorney fees from Defendants, Plaintiffs' challenge to the award of attorney fees in favor of Mr. Lankford as an individual is without merit.

The only way to make sense of Plaintiffs' argument is to assume that they intend to challenge the award in favor of Lankford & Associates, Inc. but have mistakenly referred to "Mr. Lankford." However, even if we construe the argument to apply to Lankford & Associates, Inc., it still lacks merit.

The basis for Plaintiffs' challenge to the attorney fee award is that another party apparently indemnified Mr. Lankford or Lankford & Associates, Inc. for their attorney fees. However, Plaintiffs have waived this argument because they have failed to support it with adequate citations to the appellate record. (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239 [arguments not supported by adequate citations to record need not be considered on appeal].) Plaintiffs' opening brief provides no record citations to establish that Mr. Lankford or Lankford & Associates, Inc. was indemnified. In Plaintiffs' reply brief, they state that "[Mr.] Lankford was arguably fully indemnified pursuant to his agreement with his financial partner." However, the citation provided is to the *entire* first volume of the Appellant's Appendix, which contains 291 pages and numerous documents, many of which plainly have nothing to do with indemnification. It is not our role to conduct an independent, unassisted search of the record for evidence to support Plaintiffs' argument. (*Air Couriers Internat. v. Employment Development Dept.* (2007) 150 Cal.App.4th 923, 928 ["party on appeal has the duty to support the arguments

21

in the briefs by appropriate reference to the record, which includes providing exact page citations," and we "have no duty to search the record for evidence and may disregard any factual contention not supported by proper citations to the record"].)

Although Plaintiffs provide no factual detail or citation to documents in the record to support their argument, they assert in a conclusory manner that "[i]t is not disputed that Mr. Lankford was indemnified for his attorneys' fees under the operations agreement by a party who was <u>not</u> a party to the Contribution or Purchase agreements. . . . Therefore, he is seeking to recover fees he did not pay."[9] This argument lacks legal merit because, under Civil Code section 1717, the relevant inquiry is whether attorney fees have been incurred, not whether the party is personally responsible for paying them. Thus, work performed by in-house counsel and paid for by the party's employer supports an award of attorney fees (*PLCM Group v. Drexler* (2000) 22 Cal.4th 1084; *International Billing Services, Inc. v. Emigh* (2000) 84 Cal.App.4th 1175), as does incurring attorney fees that will be indemnified by an insurance carrier (*Staples v. Hoefke* (1987) 189 Cal.App.3d 1397, 1410). As has been observed in the context of insurance coverage, plaintiffs are "not entitled to avoid their contractual obligation to pay reasonable attorney fees based on the fortuitous circumstance that they sued a defendant who obtained insurance coverage providing a defense." (*Staples*, at p. 1410.) The same policy applies here, where the

---

9      Although it is not clear from Plaintiffs' discussion, and Plaintiffs fail to provide any citations to the appellate record on the issue, it appears based on their position in the trial court that they believe Mr. Lankford's or Lankford and Associates, Inc.'s attorney fees were paid by CJUF II pursuant to an indemnification agreement in the CJUF II operating agreement.

22

indemnification was by a third party pursuant to a contractual agreement. Accordingly, the trial court did not err in awarding attorney fees even if those fees were ultimately indemnified by a third party.

DISPOSITION

The judgment and the postjudgment order awarding attorney fees are affirmed.

_____

IRION, J.

WE CONCUR:

_____

NARES, Acting P. J.

_____

HALLER, J.