Filed 6/16/15  Hooker v. Rodgers CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| PATRICK HOOKER, as Trustee, etc., | D065888 |
| Plaintiff and Respondent, | |
| DONNA RODGERS et al., | (Super. Ct. No. 37-2012-00093065-CU-OR-CTL) |
| Cross-defendants and Respondents, | |
| v. | |
| TIMOTHY VARLEY et al., | |
| Defendants, Cross-complainants and Appellants. | |


APPEAL from a judgment and postjudgment orders of the Superior Court of San Diego County, Jeffrey B. Barton, Judge.  The judgment and postjudgment orders are affirmed; motions to dismiss the appeal are denied; motion for sanctions is denied.


Wingert Grebing Brubaker & Juskie, Stephen C. Grebing and Dwayne H. Stein for Defendants, Cross-complainants and Appellants.

Law Offices of Rodney L. Donohoo and Rodney L. Donohoo for Plaintiff and Respondent Patrick Hooker, and for Respondents and Cross-defendants Lance Rodgers and Anthea Rodgers.

Fidelity National Law Group and Paul J. Meshek for Cross-defendant and Respondent Donna Rodgers.

This dispute arose over the parties' respective easement rights to the use of a common dock and gangway (the "dock") built for the use of waterfront residential properties in the Coronado Cays community development (the development), and located along a property line. Plaintiff and respondent, Patrick Hooker as trustee, etc. (of the Ellis Family Trust, dated April 9, 1993) (Hooker), the owner of one property along the dock, sued several neighbors, including defendants and appellants Timothy and Holly Varley (the Varleys) for declaratory relief, quiet title, conversion and other theories, stemming from the Varleys' replacement dock construction. The Varleys cross-complained for declaratory relief, quiet title, et cetera, against Hooker and his successor homeowners, respondents and cross-defendants Lance Rodgers and Anthea Rodgers, as well as Donna Rodgers, the former option holder (together, "the Rodgers parties"). Both sets of properties have rights through wharfage easements and deeds over an "underwater lot" owned by the City of Coronado (the City). (*Coronado Cays Homeowners Assn. v. City of Coronado* (2011) 193 Cal.App.4th 602, 605-608 [Homeowners Association sought determination of easement rights across underwater lots owned by the City.].)

After a bench trial on the complaint and cross-complaint, Hooker largely prevailed against the Varleys on his requests for declaratory and injunctive relief regarding the status of the easement rights, as well as his conversion and negligence theories.[1] The trial court's judgment, based on the statement of decision, was issued November 25, 2013, ruling on the various causes of action to establish the wharfage easement rights at 25 percent each, and awarding Hooker conditional injunctive relief if he reimbursed the Varleys for one-half their construction expenses, or $18,459.81 ("$18,459"), due to the breach of duties by Hooker's predecessor to maintain the dock. The Varleys were also found to have exceeded their rights and interfered unreasonably with Hooker's use of the wharfage easement. The trial court awarded compensatory damages of $1,000 to Hooker from the Varleys for conversion and negligence. The statement of decision and judgment expressly provide: "The issues of determining the prevailing party and award of attorney's fees shall be decided by post judgment motion." Notice of entry of judgment was served and filed January 10, 2014.

On March 21, 2014, the parties brought cross-motions for attorney fees and costs awards. Hooker sought to be declared the prevailing party through his claims he had enforced the covenants, conditions and restrictions (CC&R's) of the Coronado Cays

---

[1] The Varleys dismissed the three Rodgers parties before trial. Hooker had also sued the builder of the new dock, Swift, and obtained $1,000 compensatory damages from him. There is no appearance or issue regarding Swift on appeal. Although Hooker originally sued the owners of the two other properties that adjoined this underwater lot (Lots 211 & 212), they are no longer involved in this action or appeal. Those two properties also had undivided 25 percent leasehold interests in the easements to the dock, making up 100 percent, but this appeal only involves the 50 percent portions between Hooker and the Varleys. (Lots 210 and 209.)

Homeowners' Association (CCHOA), and he was thus entitled to statutory costs under Civil Code section 1354, subdivision (c) (now § 5975).[2] The trial court granted Hooker's motions and awarded him $104,718.90 attorney fees and additional costs against the Varleys, to be entered upon the judgment, along with costs to the Rodgers parties.

The Varleys appeal from the March 25 and April 14, 2014 postjudgment orders and/or the judgment itself (exactly which of these is disputed, in appellate motions we will address in pt. III, *post*.).

I

*ISSUES PRESENTED; THREE APPELLATE MOTIONS*

On appeal, the Varleys claim the trial court erred in awarding postjudgment attorney fees and costs pursuant to the CC&R's provisions, because the judgment resulted from a trial over rights granted in easement and title documents. Therefore, the Varleys argue no issues concerning enforcement of the CC&R's arose until the motion phase, which "for the first time" addressed entitlement to and amount of statutory or contractual attorney fees and costs. (§§ 1354, subd. (c), 1717; *Salawy v. Ocean Towers Housing Corp.* (2004) 121 Cal.App.4th 664, 671 (*Salawy*) [attorney

---

[2] All further statutory references are to the Civil Code unless noted. Former section 1354, a part of the Davis-Stirling Common Interest Development Act (the Act), is now section 5975, but we continue to refer to it by the number used in the record, section 1354, not using any "former" designation. After amendments that became effective in 2014, the Act (currently § 4000 et seq.) remains applicable to common interest developments in California. (Stats. 2012, ch. 180 (A.B. 805).)

fees awards authorized where the "essence" or "gist" of the claims properly falls within the category of enforcement of governing documents, such as CC&R's].)

To the contrary, Hooker and the Rodgers parties argue as respondents and as moving parties (dismissal) that the record discloses that legal and factual issues about the CC&R's were brought before the court throughout trial, in pleadings, exhibits, testimony and argument, and these cross-actions were properly identified throughout the proceedings as being in the nature of enforcement actions concerning the respective duties of the Varleys and Hooker as homeowners in the development. Hooker and the Rodgers therefore argue the trial court was justified in later making the awards of statutory and/or contractual fees and costs, to be entered on the existing judgment. (§§ 1354, subd. (c); 1717.)

As the merits panel, we also consider two motions by Hooker and the Rodgers parties, to dismiss or partially dismiss the appeal as untimely or excessive, insofar as the judgment terms are being challenged. Both the appeal and the dismissal motions address the interrelationship, or lack thereof, between the theories on which the judgment was issued, and the rationale for the subsequent attorney fees and costs awards. (*Torres v. City of San Diego* (2007) 154 Cal.App.4th 214, 221-224 (*Torres*) [where a nonfinal judgment is substantially modified or amended, a new appeal period starts to run].) Further, Hooker and the Rodgers parties seek to have this court award monetary sanctions for a frivolous appeal. (Code Civ. Proc., § 907.)

As we explain in part III, *post*, we shall deny the motions to dismiss, and we construe the only notice of appeal as properly relating only to the postjudgment attorney

5

fees and costs orders, identified by their dates, which were several months after the judgment was entered to fix the rights of the parties. We have jurisdiction to address the merits of the Varleys' appeal of the postjudgment orders, and do so in part IV, *post*. We interpret the judgment and its underlying statement of decision as a means of determining the propriety of the trial court's legal conclusions and discretionary decisions that were made in support of its fees and costs awards. (*Chapala Management Corp. v. Stanton* (2010) 186 Cal.App.4th 1532, 1535 (*Chapala Management*) [on review where a trial court's statement of decision sets forth the factual and legal basis for the decision, the appellate court resolves any conflict in the evidence or reasonable inferences to be drawn from the facts in support of the trial court's determinations].)

Thus, on the merits of the prevailing party and attorney fees issues, the record does not support any conclusion that the trial court misconstrued the legal issues or evidence as presented at trial. The trial court had an adequate basis in the record and did not abuse its discretion in ruling upon the motions for prevailing party determinations, fees and costs. (*Chee v. Amanda Goldt Property Management* (2006) 143 Cal.App.4th 1360, 1379-1381 (*Chee*) [relevant question on entitlement to fees under section 1354 is whether the action enforced rights and obligations of parties under development's governing documents].)

In part V, *post*, we discuss the request for monetary sanctions on appeal, concluding that they are not justified and will be denied.

## II

*FACTUAL AND PROCEDURAL BACKGROUND*

A.  Background of Dispute; Complaint and Cross-complaint Filed

We take the factual background from the record and the trial court's statement of decision, to give context to the attorney fees and costs issues that are argued on appeal. Pursuant to a complicated series of grant deeds and easements begun in the 1970's by the assignee of the developer, the properties of Hooker (later bought by the Rodgers) and the Varleys originally had undivided 25 percent leasehold interests in the easement over the water of Lot 209-A.  Eventually, a merger of the adjoining lots, sets of leases and property interests was established.  The development has two sets of CC&R's, one for the structures and one for the wharfage rights.  The CCHOA issued a member handbook and created permitting procedures, pertaining to the maintenance and upkeep of the homes and also the common and dock areas.

When the Varleys moved in sometime after 2004, the dock over the easement area was deteriorating and they repeatedly asked Hooker's predecessor, Ellis, to contribute to repairing it.  A lot of conflict ensued and Ellis repeatedly rudely refused, and he eventually moved out.  The Varleys made temporary repairs.  They obtained legal advice that led them to believe they had exclusive ownership of portions of the underwater Lot 209-A (the dock and gangway), and could prohibit Hooker as the current owner from using the dock, partly because he had waived any claim to it.

7

In 2010, the Varleys applied to the CCHOA and the City for permits to replace the dock in a "like for like" manner. They obtained approval of their plans from the CCHOA, and construction began. They instructed Swift, their builder, to destroy the original structures and rebuild them solely on the Varleys' property. As of January 2011, Hooker's property did not have any access to the water from the dock.

Hooker brought this complaint for quiet title, declaratory and injunctive relief and tort damages, as amended in the first amended complaint (the FAC), alleging that Hooker was entitled to relief, including moving the dock back to the property line, because his property owned an undivided 25 percent interest "in an easement to all of Lot 209-A, which includes the Dock, Ramp, and underlying waterway." He claimed that the Varleys committed conversion when they denied him access to the dock. In the FAC, Hooker requested attorney fees allowed by "law, statute, or this Court."

The FAC contains numerous attachments and exhibits, including leases and assignments of the "dock and wharf reservations" (wharfage easements) over Lot 209-A. The 1972 leases state, "Lessor has heretofore recorded a Declaration of Covenants, Conditions and Restrictions. . . . . This Lease is subject and subordinated to the terms of that Declaration." The grant deed of the residential property also transfers a membership in the CCHOA, subject to the CC&R's. The ultimate property owners, as lessees, were required to seek approval of the plans and specifications for construction in the marina area from the CCHOA's architectural control committee established by the CC&R's.

In the Varleys' amended cross-complaint (FACC), they attached some of the same copies of the leases and easements but interpreted them differently. The FACC sought

8

declaratory relief to the effect that the property descriptions in the leases and assignments of the easements allowed the Varleys the exclusive use of the dock. The FACC includes allegations that the properties are located in a common interest development, and its CCHOA is governed by the CC&R's. The Varleys had obtained permits and approval for their construction plans from the CCHOA prior to beginning construction on the dock. The FACC claimed that Hooker was liable for waste due to the failure of the property owner to maintain the dock, as required by the lease agreements and easement interests over Lot 209-A, and by the CC&R's. The FACC also included causes of action for quiet title by prescription, quiet title, injunction, and nuisance. The Varleys' FACC sought an award of attorney fees to the prevailing party in the action.

The parties answered each other's pleadings. As relevant here, Hooker alleged as an affirmative defense to the FACC that the Varleys did not comply with the CC&R's, and he also sought attorney fees. In July 2013, Hooker made an offer for judgment under Code of Civil Procedure section 998 (not accepted), that he and the Rodgers parties would be deemed the prevailing parties on both the FAC and the FACC, and the issue of costs and attorney's fees would be left to the trial court.[3]

---

[3] Ultimately, Hooker's recovery from the Varleys was less favorable than the Code of Civil Procedure section 998 offer. However, the court declined to base the attorney fees and costs rulings on that factor because the Code of Civil Procedure section 998 offer was unclear about potential attorney fee liability, and thus it was not a realistic offer. No issues about Code of Civil Procedure section 998 costs are raised on appeal.

## B. Issuance of Statement of Decision and Judgment

The statement of decision was attached and incorporated by reference into the judgment filed November 25, 2013. The trial court made extensive factual and legal findings in reaching the following conclusions. It ordered that the two property owners each have a 25 percent undivided interest in the easement over Lot 209-A for building and using the dock. The court found "the use of the easement over Lot 209-A reflects the intent of the original parties to create the easement, [it] has been used the same way for forty years, and that it was appropriate for Respondents to raise the issue." The Varleys had "exceeded their rights and unreasonably interfered with" Hooker's use of the easement, when they destroyed the original structures and rebuilt them to deny Hooker any access. The court ruled that the new location of the dock interfered with Hooker's use of the easement, but that his predecessor's failure to contribute to the repair of the dock was a partial cause of the dispute.

Accordingly, the court concluded that Hooker was entitled to conditional mandatory and prohibitory injunctive relief, and must pay half of the construction costs of the dock to the Varleys ($18,459). Hooker could arrange to have the dock relocated and was responsible for obtaining all plans and approvals. The Varleys were ordered not to impede the process of relocating the dock and to "cooperate to the extent necessary" to allow the process to happen. They were also enjoined from interfering or preventing Hooker or successor owners from using and enjoying the easement.

Hooker was awarded $1,000 in compensatory damages from the Varleys and from Swift (their agent), on the conversion and negligence theories. No punitive damages were awarded. The Varleys did not recover anything on the FACC, other than the reimbursement of one-half of their building costs ($18,459) awarded to them in equity, from Hooker.

The judgment concluded, "The issues of determining prevailing party and award of attorney's fees shall be decided by post judgment motion." Hooker filed and served a notice of entry of judgment on January 10, 2014.

### C. Postjudgment Motions and Orders "Entered"

The posttrial motions included Hooker's motion to be declared the prevailing party for purposes of statutory fee entitlements, and the Varleys' motions to tax costs. (There were also cross-motions by Swift and the Rodgers parties, but they are not argued on this appeal.) At argument, the parties did not dispute that the CCHOA did not want to get involved in their dispute and told them to resolve it themselves. After the March 21, 2014 hearing on the posttrial motions, the trial court issued four separate minute orders.

On the prevailing party motion, the court determined that Hooker et al. "did, in fact, prevail on their litigation objectives." The "major points of contention in the litigation" had been the quiet title claim and the request for declaratory and injunctive relief, as well as conversion, and Hooker had prevailed on each of those claims. Specifically, Hooker obtained "a complete victory on the Causes of Action seeking to enforce the provisions of the deeds, easements and CC&Rs to establish [Hooker's] right

11

to access the jointly owned dock between the properties. . . . Finally, [Hooker] prevailed on the [Varleys'] cross-complaint which sought attorney's fees under the CC&R's."

In awarding attorney fees, the trial court acknowledged that the FAC did not label any of its causes of action in terms of violations of specific provisions of the CC&R's. However, the FAC did allege that the Varleys had violated the CC&R's by constructing the dock in a manner which denied access to Hooker, and by exceeding the scope of the plans submitted to and approved by the CCHOA. (Art. II, para. 10 of the CC&R's.) The ruling states that both the pleading and proof at trial showed that the Varleys had sought permission from the CCHOA to replace the dock in a "like for like" manner, but they did not perform the construction according to their plans or the permission as granted to them by the CCHOA. The construction was in violation of "two sets of applicable CC&R's," when it "cut off the access and denied the rights of ownership to [Hooker]."

The issue of the Varleys' failure to obtain the required permission from the CCHOA to relocate the dock "was central to the litigation." That issue "was pleaded in the FAC and incorporated into the Causes of Action upon which [Respondent] prevailed." The court reasoned that the references at trial to the easements and documents of title were important and complementary to establishing Hooker's rights to and ownership of an undivided percentage of the dock. "The violation of the CC&R's were the actions that cut off the access and denied the rights of ownership to Hooker."

With respect to the statutory basis for an award of attorney fees, the trial court analyzed the authority of *Chee, supra*, 143 Cal.App.4th at pp. 1379-1380, on the concept of whether the action had been brought to enforce the rights and obligations of the parties

12

under the governing documents, and it thus justified a fees request. (§ 1354.) The ruling continued, "The court finds there is a right to recover attorney's fees pursuant to the Coronado Cays CC&R's, the Wharfage CC&R's as well as Civil Code Section 1354(c) and its successor Civil Code section 5975. Moreover the Coronado Cays CC&R's had a prevailing party attorney's fees provision." Both the FAC and FACC had requested an attorney fees award.

In determining the amount of attorney fees to be awarded, the trial court observed that this "trial and discovery dealt with complex title, easement and CC&R issues," and considerable factual and legal disputes on other issues. The court observed that the attorney fees billings as submitted by Hooker did not support any clear allocation between work performed for the causes of action that were successful, or the tort claims on which he did not prevail. The court accordingly reduced the requested fees by 40 percent, "reflecting the amount of the billings that either were spent on Causes of Action upon which the plaintiff did not prevail . . . . *The court endeavored to exercise appropriate discretion under the totality of the circumstances presented*." (Italics added.)

The trial court's four minute orders determined that Hooker was the prevailing party, although the court acknowledged in one of the orders that it was a somewhat close case for the determination of the prevailing party. Hooker had been required to pay the Varleys reimbursement for their construction costs, and he obtained only a small amount of compensatory damages. Nevertheless, Hooker was entitled as the prevailing party to an award of $104,718.90 attorney fees against the Varleys. Costs awards were made in

his favor against the Varleys and Swift ($4,732.50).  Additionally, the Rodgers parties were awarded costs against the Varleys (in amounts of $11,446.21 and $1,425).

Hooker as the prevailing party sent notice of the rulings on March 25, 2014, and the formal "ORDER ENTERING FEES AND COSTS ON JUDGMENT" was signed by the trial court on April 14, 2014.  The judgment entered on November 25, 2013 was not altered and was evidently deemed by the trial court to reflect the postjudgment orders, including the prevailing party determination and the awards of attorney fees and costs.

The Varleys' attorney filed a notice of appeal on April 18, 2014, checking the boxes on the form for both a judgment after court trial, and an order after judgment.  The notice states that the order or judgment appealed from was issued March 25, 2014 and had been "amended April 14, 2014".

III

*MOTIONS TO DISMISS*

A.  Issues Presented

Before the respondents' briefs were filed, Hooker and the Rodgers parties brought a motion to dismiss, on the grounds that the appeal had not been timely filed with respect to the underlying judgment, and that the orders that "entered" attorney fees and costs on the judgment previously entered had not "amended" that judgment in any substantial or material way, so as to extend the time for appealing any of the judgment's provisions. (*Torres, supra*, 154 Cal.App.4th at pp. 221-224.)  They argued that the Varleys' appeal could only address issues related to costs and fees.

14

After the Varleys filed their appellants' opening brief, Hooker and the Rodgers parties (except Donna Rodgers) brought another motion to (partially) dismiss the appeal, on the grounds that any challenges to the judgment itself had been abandoned. They argued the merits of the judgment underlying the postjudgments fees orders were not specifically addressed or discussed in the opening brief.

In their opposition to each of the dismissal motions, the Varleys contend that the trial court did not determine until the attorney fees proceedings that the action was one to enforce the CC&R's, and that this determination "substantially modified the original judgment." They also argue that the trial court made findings it had not made in the original judgment, such as which wrongs were "central to the litigation." They therefore claim that the judgment was amended or substantially modified, materially affecting their rights and making the appeal timely as to both judgment and orders. (*Stone v. Regents of University of California* (1999) 77 Cal.App.4th 736, 743.) The motions have been deferred to this merits panel (along with the sanctions motion; pt. V, *post*).

B. Background Regarding Enforcement Efforts of Judgment

As shown in exhibits presented with the appellate motions for dismissal, opposition, and the sanctions motion (to be addressed separately in pt. V, *post*), in May 2014, the Varleys sought an order staying execution of the judgment pending appeal, including the attorney fees award. The Varleys took the position in court that only the fees and costs portion of the judgment was being appealed and therefore no bond was required to stay execution. (Code Civ. Proc., § 917.1, subd. (d).) The trial court granted the relief requested on May 15, 2014, staying execution of the portion of the judgment

15

relating to fees and costs.  The court noted that the Varleys had represented to it, through their attorney as an officer of the court, that the only ruling being appealed was the award of attorney fees (not the $1,000 compensatory damages).  The Varleys told the trial court their notice of appeal had, in an abundance of caution, included designation of the entire judgment on the form, because the fees were included in the judgment, which the court thought was understandable.

Later in May 2014, the Varleys asked the trial court to set the amount of an undertaking to be required on appeal, on the ground that their attorney had consulted with the title insurance carrier *and had decided* "*to increase the scope of the appeal to include the underlying judgment and findings related to the easement between the Ellis [Hooker] and Varley properties.*"  (Italics added.)  The Varleys' counsel noted that they had received a check for the $18,459 reimbursement owed to them from Hooker, but had returned it, explaining that they were "increas[ing] the scope of the[ir] appeal."  The trial court declined to rule, other than referring counsel to statutory provisions for the right to set a bond or the amount of the bond on appeal.  The Varleys then posted a bond in the amount of $200,000.

Also as shown in the sanctions motion, Hooker requested that the trial court begin contempt proceedings against the Varleys for noncompliance with the judgment, when they allegedly interfered with the repositioning of the dock.  The court set an order to show cause regarding contempt in September 2014.  It is not clear what happened next, but we need not address such issues not properly raised on appeal or in the subject motions.  (See pt. V, *post*.)

### C. Analysis of Dismissal Motions

We first observe that a timely appeal is essential to appellate jurisdiction. (*Griset v. Fair Political Practices Commission* (2001) 25 Cal.4th 688, 696-698 [judgment final where it resolves all issues except for any compliance with its terms]; *Jennings v. Marralle* (1994) 8 Cal.4th 121, 126; Code of Civ. Proc., § 904.1, subds. (a)(1), (2).) If the appeal is untimely, this court has no jurisdiction to consider it, and it must be dismissed. (Cal. Rules of Court, rule 8.104(b).) A notice of appeal must be filed on or before the earliest of (1) 60 days after the superior court clerk serves the notice of entry of judgment or a file-stamped copy of the judgment, showing the date either was served, (2) 60 days after the date of service of the notice of entry of judgment or a file-stamped copy of the judgment, or (3) 180 days after the date of entry of the judgment. (Cal. Rules of Court, rule 8.104(a).)

Normally, when a party seeks to challenge both a final judgment and a postjudgment costs/attorney fee order, the procedure is to file two separate appeals: one from the final judgment, and a second from the postjudgment order. (*Torres, supra*, 154 Cal.App.4th at p. 222.) Here, the Varleys argue that effectively or impliedly, the judgment was substantively "amended" by the terms of the postjudgment rulings, and that the single notice of appeal gave us jurisdiction to address all their claims about the lack of foundation in the judgment for the rulings. This timeliness issue depends on whether the postjudgment orders amounted " 'to a substantial modification of the judgment,' " so that a new time period for appeal of the original judgment began. (*Ibid.*; where judgment was

17

modified merely to add costs, attorney fees and interest, it is not " 'substantially changed and the time to appeal it is therefore not affected' ".)

In this case, 60 days passed after the January 10, 2014 notice of entry of judgment, without any appeal being filed. There is only one notice of appeal, listing two dates, the March 25 notice of rulings on the postjudgment motions, and the April 14, 2014 order (entering fees and costs on judgment). No motion for reconsideration or new trial or to vacate the judgment was made. (See *Nestlé Ice Cream Co., LLC v. WCAB* (2007) 146 Cal.App.4th 1104, 1109-1110 [amendment of nonfinal judgment by new trial order or order to vacate, in exercise of judicial function or discretion, can amend the judgment and start a new appeal period running].) No document entitled an amended or modified judgment has been prepared or entered, and the judgment of November 25, 2013 has not been expressly altered or superseded.

Several tests have been developed for analyzing whether a later order effectively amends the substance of an earlier judgment. In *Stone v. Regents of University of California, supra*, 77 Cal.App.4th at pp. 743-744, the court looked to whether the change was a clerical one, as opposed to change that "was material and substantial. '[I]f a party can obtain the desired relief from a judgment before it is amended, he must act — appeal therefrom — within the time allowed after its entry. If the amendment materially and in a substantial respect affects the judgment and the rights of a party against whom it is rendered, and a party desires relief therefrom, he must appeal from the corrected judgment.' [Citation.] Changes which correct errors, mistakes and omissions made through inadvertence, but do not involve the exercise of the judicial function, are

18

considered corrections of clerical errors that leave the original judgment intact." (*Ibid.*)

In *Stone*, the court concluded that an appeal of the underlying judgment was timely, where an amendment or modification order had required the defendants to pay an additional nine months' worth of defense costs, and it thus materially affected their rights. (*Id.* at pp. 743-744.)

Other cases have rejected a test that uses the distinction between clerical or judicial error, for defining "substantial modification" or amendment, and its effect upon the time limits for filing a notice of appeal. In *Sanchez v. Strickland* (2011) 200 Cal.App.4th 758, 764-766 (*Sanchez*) and *Dakota Payphone, LLC v. Alcaraz* (2011) 192 Cal.App.4th 493, 506-507 (*Dakota Payphone*), the courts concluded that merely distinguishing between clerical error and judicial error does not resolve the issue of whether a "substantial modification" occurred through a postjudgment order. "Furthermore, we reject the proposition that all changes correcting clerical errors in judgments are insubstantial or immaterial." (*Sanchez,* at p. 766; see *CC-California Plaza Associates v. Paller & Goldstein* (1996) 51 Cal.App.4th 1042, 1049 ["we cannot imagine a more substantial or material change in the form of the judgment than in the identity of the losing party"].) Effectively, the question on timeliness should be whether the modification or amendment creates a new legal ground affecting the rights of the parties that was not addressed or resolved at trial. (*Sanchez,* at p. 767.)

In another type of situation, the courts have focused on the separately appealable nature of some postjudgment orders to determine whether an appeal is timely. Under Code of Civil Procedure section 904.1, subdivision (a)(2), a postjudgment attorney fees

19

award that is separately appealable is viewed as a collateral matter. (*Sanchez, supra*, 200 Cal.App.4th at p. 766.) Such an award effectively enforces the judgment but does not change its terms with regard to the substantive resolution of the issues of law and fact that were presented to the trial court. (*Torres, supra*, 154 Cal.App.4th at p. 222.) The rationale is that the party dissatisfied with the judgment could have appealed from it to obtain review, so a separate or collateral order should not be deemed to be an amendment that would extend the time for appeal. (*Dakota Payphone, supra*, 192 Cal.App.4th at p. 508 ["[I]t is ultimately the parties' ability to challenge the ruling that is key," for purposes of determining whether there was a substantial modification to the judgment that gives the party more time to appeal.].) It has "generally been held unfair to the parties to allow the trial court to make a change that they cannot, thereafter, challenge." (*Id*. at p. 507; *Sanchez,* at pp. 764-767.)

Whether we use the "separately appealable order" rule, or the rule that a modification materially affecting the rights of the parties is substantial and thus restarts the time in which to appeal, we conclude that the Varleys' notice of appeal is timely only as to the postjudgment orders, not the underlying judgment. Although we defer discussion of the merits of the postjudgment orders until part IV of this opinion, we can say as a preliminary matter, with regard to the motions, that the prevailing party determination on the motion under section 1354 did not substantively modify or change the terms of the judgment. Instead, it implemented the substantive rulings made at trial on issues central to the litigation, that Hooker had shown the Varleys violated their duties under the governing rule structures applicable to the development, which included the

20

CC&R's and the permit procedure required for construction that utilized the architectural committee of the CCHOA. For purposes of analyzing the scope of appellate jurisdiction, we conclude that the later attorney fees orders do not contain a completely different legal basis for resolving the substantive causes of action pursued at trial. They did not impliedly amend or modify the judgment to reflect "a new legal ground" for the outcome. (*Sanchez, supra*, 200 Cal.App.4th at p. 767.)

Even though the prevailing party issue was deferred until the postjudgment motion phase, the Varleys have no colorable claim that they appealed from a judgment that was somehow substantively "amended" by the postjudgment rulings. Rather, the judgment expressly anticipated that any issues regarding prevailing party and attorney fees and costs entitlements would be decided in postjudgment motions, as they were, based on the terms established in the judgment. Whatever their subjective wishes, the Varleys and their attorney did not have the power unilaterally to change the scope of their appeal, from what they had previously designated on the notice of appeal itself. They cannot confer jurisdiction on this Court by relabeling the record or their claims.

Under the applicable standards, it cannot be said that this notice of appeal was timely filed as to any of the trial court's rulings and decisions *except for* the postjudgment orders on attorney fees and costs, according to the dates given on it. (Code Civ. Proc., § 904.1, subd. (a)(2.) "Amended" is a term of art in this context, and its application is not supported by this record. The orders clearly were to be "entered" on the existing judgment and they did not reopen the issues resolved at trial, but only implemented them. The postjudgment orders are properly before us and we must examine the legal bases for

21

them, as they are founded in and disclosed by the judgment terms. We shall also address the discretionary decision to award the amounts stated.

In an exercise of our discretion, we deny the motions to dismiss, because it would be a waste of judicial resources to dismiss in view of the lengthy course of this appeal and the types of legal issues presented. Neither the motion for dismissal or partial dismissal presents any essential jurisdictional issues for determination. The briefing is complete and, as we will show, the substantive issues on the attorney fees and costs entitlements and amounts are limited. We construe the appeal as having been timely taken solely from the postjudgment orders, and proceed to the merits.

IV

*ANALYSIS OF LEGAL BASES FOR POSTJUDGMENT ORDERS*

A. Rules of Review: Entitlement and Amount Issues

We next evaluate the attorney fees entitlement issue to determine whether the issues joined at trial, as identified and resolved by the statement of decision and judgment, were sufficiently connected to enforcement of the CC&R's or other governing documents, for purposes of applying the terms of section 1354, subdivision (c). The other side of the same coin (not separately argued here) is whether the contractual fee entitlement of section 1717 applies, where the CC&R's contained an attorney fees provision.

De novo review applies to a "pure issue of law regarding the entitlement to attorneys' fees." (*Abouab v. City and County of San Francisco* (2006) 141 Cal.App.4th 643, 661.) Section 1354 provided that CC&R's create enforceable equitable servitudes,

unless unreasonable, which "shall inure to the benefit of and bind all owners of separate interests in the development. Unless the declaration states otherwise, these servitudes may be enforced by any owner of a separate interest or by the association, or by both. [¶] . . . [¶] In an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs." (§ 1354, subds. (a) & (c).)[4]

After the entitlement issues, the next portion of the inquiry examines whether the trial court's prevailing party determination in awarding attorney fees pursuant to section 1354 amounted to any abuse of discretion. (*Heather Farms Homeowners Assn., Inc. v. Robinson* (1994) 21 Cal.App.4th 1568, 1574 (*Heather Farms*); on § 1717 contractual fees discretion, see also *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) The amount of fees awarded, or allocation of them, is also subject to abuse of discretion analysis. (*Ibid.*; *Chee, supra*, 143 Cal.App.4th at pp. 1380-1381.) Abuse of discretion occurs if the trial court exceeded the bounds of reason, or failed to apply correct legal standards and thereby took action outside the confines of the applicable principles of law or without substantial support in the evidence. (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420.)

Generally, when we review a judgment based on a statement of decision, we resolve any conflicts in the evidence or in the inferences to be drawn from the facts, in

---

4       "Governing documents" was defined in section 1351, subdivision (j) (now § 4150) as meaning "the declaration and any other documents, such as bylaws, operating rules, articles of incorporation, or articles of association, which govern the operation of the common interest development or association." (Added by Stats. 2012, ch. 180 (A.B. 805), § 2, operative Jan. 1, 2014; nonsubstantive change only.)

23

support of the trial court's determinations about the factual and legal issues presented to it. (*Chapala Management Corp., supra*, 186 Cal.App.4th at p. 1535.) "If the statement of decision is ambiguous or omits material factual findings, we will infer any factual findings necessary to support the judgment." (*Ibid.*) As another general rule, all intendments and presumptions are made to support the judgment on matters as to which the record is silent. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.)

### B. Terms of Judgment and Statement of Decision

The Varleys seek to show that the CC&R's and the governing documents did not play an important role in the trial, which they claim dealt chiefly with the wharfage easements and documents of title. The gravamen of the action is determined from the pleadings that allege violation of duties, such as those imposed by the CC&R's. (*Cutujian v. Benedict Hills Estates Assn.* (1996) 41 Cal.App.4th 1379, 1388, fn. 2.) In the judgment, the court resolved the equitable claims by quieting title and issuing conditional mandatory and prohibitory injunctive relief, and awarded compensatory damages, all based on its assessment of the respective rights of the parties as residents of a common interest development. Some of those easement and title documents include references to the common interest nature of the development and the effect of the CC&R's. Hooker obtained monetary damages for the conversion and related theories, not contract. (Cf. *Chee, supra*, 143 Cal.App.4th at pp. 1380-1381 [interpreted fee provisions of section 1354, subdivisions (a) and (c) as applicable to cause of action for breach of contract that sought damages for CC&R's violation].) The court in *Chee* also noted that

24

equitable theories can support an award of attorney fees under section 1354, where their effect was to enforce the CC&R's. (*Chee,* at p. 1380.)

In the factual findings in the statement of decision, the trial court referred to testimony about the dealings of the CCHOA with the parties concerning the efforts to repair and monitor access to the dock, and its review of the application by the Varleys to replace the dock. In the discussion of the respective claims by the parties, the court found that the Varleys altered the easement in a manner unreasonably interfering with Hooker's rights to use it, and the court considered and referred to the approval requirements of both CCHOA and the City.

The Varleys' claim for waste in their cross-complaint, invoking the CC&R's, was rejected for failure to follow the required procedures for arbitration and timely filing. However, the trial court in equity was requiring Hooker to compensate the Varleys for one half the cost of the new dock, as a condition precedent to their right to use it. In awarding damages against Swift, jointly and severally with the Varleys, the court noted that when they moved the dock/gangway, they knew this deviated from the plans submitted to the CCHOA and the City. Both parties obtained some degree of relief at trial, and the prevailing party issue was deferred until the posttrial phase.

C. Entitlement to Statutory or Contractual Fees; Prevailing Party

With the above summary of the conclusions in the judgment and underlying statement of decision, we next consider whether the postjudgment attorney fees rulings broke new ground in deciding whether the cross actions had been brought in enforcement of the CC&R's. In its rulings, the court referred to the pleading and proof at trial as

25

showing that the Varleys had sought permission from the CCHOA to replace the dock in a "like for like" manner, but they wrongfully did not complete the construction according to their plans or the permission as granted to them by the CCHOA. The construction was found to be in violation of "two sets of applicable CC&R's," when it "cut off the access and denied the rights of ownership to Hooker." The relevant lease documents invoked the CC&R's as applicable to and controlling over them. The deeds to the properties also transferred memberships in the CCHOA.

In its postjudgment orders, the trial court identified the issue of the Varleys' failure to obtain the required permission from the CCHOA to relocate the dock as "central to the litigation." That issue "was plead[ed] in the FAC and incorporated into the Causes of Action upon which [Hooker] prevailed." The references at trial to the easements and documents of title were identified by the court as important and complementary to establishing Hooker's rights to and ownership of an undivided percentage of the dock. "The violation of the CC and R's were the actions that cut off the access and denied the rights of ownership to [Hooker]." Likewise, the court stated that CC&R's issues had been dealt with at trial, along with the title and easement disputes. This is in contrast to the situation in *Salawy, supra*, 121 Cal.App.4th at p. 671, where the allegations that "invoked" the governing documents were in actuality based on an alleged promise by the property owner that was "unrelated to the governing documents." Accordingly, the action in *Salawy* did not rely sufficiently on the governing documents to justify a fees award. (*Id*. at pp. 671-674.)

26

The trial court's rulings on the motions noted that the FAC did not label any of its causes of action in terms of violations of specific provisions in the CC&R's. However, the judgment made other findings about the regulations applicable to these properties, with respect to whether either Hooker or the Varleys had breached their duties as homeowners. They were members of the CCHOA and had notice of the CC&R's. It was crucial to the trial court's determinations that the Varleys had violated the procedures established by the CC&R's, when they replaced the dock in a manner which denied access to Hooker, and which exceeded the scope of the plans submitted to and approved by the CCHOA. (Art. II, para. 10 of the CC&R's.)[5] Hooker was likewise bound by those duties and had to reimburse the Varleys for half of the construction costs. Trial of both the "action" and cross-action required reference to the governing documents and the role of the CCHOA, as well as its architectural committee. (*Windsor Pacific LLC v. Samwood Co.* (2013) 213 Cal.App.4th 263, 273-275 [the words "action or proceeding" encompass the entire action or proceeding, including the complaint and responsive pleadings].)

The trial court interpreted the subject leases and easements in a legal context that included the equitable servitudes imposed by the recorded CC&R's. (*See Citizens for*

_____

5    There is no contention here that the permitting procedures established for the CCHOA exceeded the scope of the CC&R's. (See *Rancho Santa Fe Assn. v. Dolan-King* (2004) 115 Cal.App.4th 28, 41 [HOA can enforce governing covenant and subsequently enacted restrictions if the provisions are reasonable " 'in light of "the restriction's effect on the project as a whole," not from the perspective of the individual homeowner' "]; *Dolan-King v. Rancho Santa Fe Assn.* (2000) 81 Cal.App.4th 965, 975; *Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 383.)

27

*Covenant Compliance v. Anderson* (1995) 12 Cal.4th 345, 349 [recorded CC&R's are enforceable against purchasers of property].) We acknowledge that the Varleys have some basis to dispute whether the individualized easement and title deeds themselves should amount to community "governing documents," within the plain language definitions of section 1351, subdivision (j). However, that argument overlooks the basic factual and legal context of the trial. At all the relevant times, the trial court was advised by the pleadings and exhibits that the properties in dispute and their easement interests over Lot 209-A, including the dock area, were "governed" by the CC&Rs, and were thus subject to the permitting and approving requirements of the CCHOA. The exhibits attached to the pleadings and presented at trial mention the CCHOA and the CC&R's, such as the Leases and related agreements, and this property were developed as a common interest development. The issue of enforcement of the CC&R's was specifically alleged in the FACC's claim of relief for Hooker's waste of the property. Those documents included the Coronado Cays CC&R's (including a prevailing party attorney's fees provision) and the Wharfage CC&R's.

There is no mystery as to what was before the trial court at either phase of the proceedings, which were not confined to easement and title, to the exclusion of issues about the governing documents (e.g., the references to the CC&R's and request for attorney fees in the FACC). To the extent the statement of decision is ambiguous, we should infer those factual findings necessary to support the judgment. (*Chapala Management Corp., supra*, 186 Cal.App.4th at p. 1535.) As already discussed, the record shows these postjudgment rulings did not represent a new exercise of a judicial function

28

or discretion, or a new legal ground for the ruling that would be sufficient to "amend" the judgment or to start a new appeal period running for the underlying judgment. (*Nestlé Ice Cream Co., LLC v. WCAB, supra*, 146 Cal.App.4th at pp. 1109-1110; *Sanchez, supra*, 200 Cal.App.4th at p. 767.)

With respect to the prevailing party issue, one of the postjudgment minute orders makes note that the case was a close one as to who had gained the most relief. Such a prevailing party determination is within the trial court's discretion. (*Heather Farms, supra*, 21 Cal.App.4th at p. 1574) The determination was adequately based upon the court's legal conclusions formed at trial and reported in the judgment. For purposes of applying section 1354, subdivision (c), the record adequately shows Hooker "prevailed on a practical level," on the claims invoking the CC&R's and resolved at trial. (*Heather Farms,* at p. 1574.) Under our reading of the allegations of the FAC and the FACC, the "gist" and the essence of these cross-actions were to enforce provisions in the governing documents, on equitable theories. Thus, sufficient connections between the substantive theories presented at trial and the requirements of the governing documents were shown to bring this action within the scope of section 1354, subdivision (c). The declaratory and injunctive relief issued about the dock dispute, on the issues framed by the pleadings, served to enforce the "rights and obligations of the parties under the governing documents." (*Chee, supra*, 143 Cal.App.4th at p. 1380.) The trial court correctly applied the statutory provisions of section 1354, subdivision (c) to the facts and legal conclusions already established at trial, in making its postjudgment rulings on prevailing party attorney fees.

29

## D. Amounts of Fees and Costs Awards

"The amount of an attorney fee to be awarded is a matter within the sound discretion of the trial court. [Citation.] The trial court is the best judge of the value of professional services rendered in its court, and while its judgment is subject to our review, we will not disturb that determination unless we are convinced that it is clearly wrong." (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1134 (*Akins*).)

The trial court is given discretion to allocate fees where there is entitlement to recover them on some grounds, but not on other theories. (*Chee, supra*, 143 Cal.App.4th at p. 1381 [Association's fees for defending an owner's claims for breach of contract and request for declaratory relief were recoverable as governed by the CC&R's; however, negligence claims were not within the scope of the fees provision].) Apportionment of attorney fees between those incurred on causes of action for which fees are properly awarded, and those incurred on other claims, will not be required "when the claims for relief are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units." (*Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 687.)

In this case, the trial court's rulings on the amounts of fees requested demonstrated a full understanding of the complicated nature of the litigation. The court distinguished between the causes of action related to the respective duties imposed under the CC&R's (the equitable ones on which Hooker was the prevailing party), and the claims on which Hooker did not prevail. The court deducted amounts that Hooker's attorney had charged

30

for interoffice activities and similar billing matters, in an effort to ensure that no excessive fees were awarded upon the successful claims. This was a proper discretionary resolution of the issues presented on the motions for costs and fees awards, and the court acted within legal bounds in judging the value of professional services rendered. (*PLCM Group, Inc. v. Drexler, supra*, 22 Cal.4th at p. 1095; *Akins, supra*, 79 Cal.App.4th at p. 1134 [reversal required only if the amount awarded in attorney fees "is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination"].) We affirm the postjudgment fees and costs orders.

V

*MOTION FOR SANCTIONS ON APPEAL*

A. Applicable Standards

Although we have determined the Varleys' appeal is without merit, it is a separate issue whether it is "indisputably" meritless, i.e., whether "any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 (*Flaherty*).) A related question raised in the sanctions motion is whether the Varleys' and their counsel's posttrial and posthearing actions, in seeking to avoid a bond requirement, then attempting to change the scope of the appeal, then apparently resisting or failing to cooperate with the reconstruction efforts, are sanctionable in view of the arguable "abandonment" of any substantive challenge to the judgment itself in their opening brief (as opposed to attacking the postjudgment motion orders).

31

In determining whether an appeal is sanctionable, case law applies both subjective and objective standards. The subjective standard looks to the motives of the appealing party and his or her attorney, while the objective standard looks at the merits of the appeal from a reasonable person's perspective. (See *Flaherty*, *supra*, 31 Cal.3d at pp. 649-650.) Whether the party or attorney acted in an honest belief there were grounds for appeal makes no difference if any reasonable person would agree the grounds for appeal were totally and completely devoid of merit. (*Estate of Walters* (1950) 99 Cal.App.2d 552, 558.)

The objective and subjective standards "are often used together, with one providing evidence of the other. Thus, the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay." (*Flaherty, supra*, 31 Cal.3d at pp. 649-650.) An unsuccessful appeal, however, " 'should not be penalized as frivolous if it presents a unique issue which is not indisputably without merit, or involves facts which are not amenable to easy analysis in terms of existing law, or makes a reasoned argument for the extension, modification, or reversal of existing law.' " (*Dodge, Warren & Peters Ins. Services, Inc. v. Riley* (2003) 105 Cal.App.4th 1414, 1422.)

B. Grounds for Motion; Analysis

Hooker, joined by the Rodgers, argues that the Varleys employed purely dilatory tactics by "purportedly appealing the underlying substantive judgment," and by opposing Hooker's initial motion to dismiss the appeal. Hooker claims that the Varleys' efforts to stay execution of the underlying judgment were based on claims that the judgment itself was being challenged, but they have failed to brief in any significant way any challenges

to the judgment, as opposed to the orders, and they cannot have it both ways.  Hooker et al. supply an attorney declaration that they incurred at least $10,950 in attorney fees and costs related to this appeal.

In connection with the motions to dismiss (pt. III.B., *ante)* and the factual background set forth above, we have already outlined the sorry saga in which the Varleys first sought relief from execution of the judgment, then asked the trial court to set the amount of an undertaking to be required on appeal, on the ground that their attorney had consulted with the title insurance carrier and had unilaterally decided "*to increase the scope of the appeal to include the underlying judgment and findings related to the easement between the Ellis and Varley properties.*"  (Italics added.)  The Varleys rejected Hooker's and the Rodgers' check for the $18,459 owed to them under the judgment, by claiming that they were "increasing the scope of their appeal" and the entire matter was being stayed.  The trial court declined to rule on their request to set a bond on appeal, other than to refer counsel to statutory provisions on undertakings.  The Varleys then posted a bond in the amount of $200,000.  Next, Hooker requested that the trial court begin contempt proceedings against the Varleys for noncompliance with the judgment, when they allegedly interfered with the repositioning of the dock.  The record does not disclose any results of any such contempt proceedings.

It was the Varleys' counsel who unsuccessfully attempted to redefine the scope of the notice of appeal in connection with the request to stay execution of the judgment, whether this was done as a strategic matter or as a mistake of law.  (See *Kim v. Westmoore Partners, Inc*. (2011) 201 Cal.App.4th 267, 292 ["It is critical to both the

bench and the bar that we be able to rely on the honesty of counsel. The term 'officer of the court,' with all the assumptions of honor and integrity that append to it, must not be allowed to lose its significance."].) The face of the notice of appeal and the timing of its filing, in view of the structure of the judgment and the postjudgment orders, do not support any claim that the judgment terms themselves were timely challenged. Now the Varleys' opposition to the sanctions motion blames the trial court for causing or contributing to the "confusion." We are not sympathetic with the Varleys' attitude toward the trial court. The court was forced to deal with the case in the manner that the parties' changing theories of trial and procedure required, and it reached the merits of each question presented by exercising its discretion to make rulings that were based on a rational interpretation of the proceedings on record.

As explained above, construing the statement of decision, judgment, and postjudgment orders together, while admittedly a fairly complicated process, has left us no doubt that both sides presented issues to the trial court concerning enforcement of the CC&R's and governing documents, within the meaning of section 1354. The rule is that sanctions should be used sparingly to deter only the most egregious conduct. (*Flaherty*, *supra*, 31 Cal.3d at pp. 649-650) This record does not contain clear and convincing evidence that would cause any reasonable attorney to agree that each of the grounds advanced by the Varleys, at the various times involved, completely lacked any merit. We will not conclude that they subjectively and objectively pursued this appeal in bad faith. (*San Bernardino Community Hospital v. Meeks* (1986) 187 Cal.App.3d 457, 470; *Flaherty*, *supra*, at pp. 649-650.)

34

DISPOSITION

The judgment and postjudgment orders are affirmed.  The motions to dismiss the appeal and for sanctions are denied.  Hooker and the Rodgers parties are awarded their ordinary costs in connection with the appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


McDONALD, J.


IRION, J.

35