FILED

MAR 14 2017

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**
**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No. CC-16-1195-CTaF |
| AZIZOLAH JAVAHERY, | Bk. No. 2:14-bk-33249-DS |
| Debtor. | Adv. No. 2:15-ap-01056-DS |
| AZIZOLAH JAVAHERY, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| SORAYA JAVAHERI-LEITNER; SIMIN JAVAHERY-KHOJASTEGAN, | |
| Appellees. | |

Argued and Submitted on February 23, 2017
at Pasadena, California

Filed - March 14, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Deborah J. Saltzman, Bankruptcy Judge Presiding

───────────────────────

Appearances: Michael L. Poole argued for Appellant Azizolah Javahery; M. Jonathan Hayes of Simon Resnik Hayes LLP argued for Appellees Soraya Javaheri-Leitner and Simin Javahery-Khojastegan

───────────────────────

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, see Fed. R. App. P. 32.1, it has no precedential value. See 9th Cir. BAP Rule 8024-1.

1

Before: CLEMENT[**], TAYLOR, and FARIS, Bankruptcy Judges.

This case arises out of treachery practiced over years by a brother against his two younger sisters. Lest one think our characterization of the brother's actions to be unfairly harsh, we quote the state court who passed on this dispute before it landed in bankruptcy court. The siblings are members of a "conservative and male-dominated Jewish Iranian family[,]" in which the eldest male was "the most respected and dominating member of the family." Guided by less than noble motives, the brother had convinced his sisters to turn over antiques, jewelry and money to him for safekeeping and for investment, and had promised that he would return those assets to the sisters on request. And they did so. The state court found that the brother "waged a systematic campaign of fraud" against his sisters and "long planned to claim ownership" of the "fruits of their difficult labor." It also stated that he "took every possible step to ensure their financial ruin."

When the brother refused to return the sisters' money and other valuables, they brought suit in the California Superior Court. After trial, the state court found for the sisters on each of ten different common law causes of action, including fraud and conversion and awarded compensatory damages of approximately $500,000 as well as punitive damages of $350,000 to each sister.

The brother filed bankruptcy, and the sisters brought an

---

[**] Hon. Fredrick E. Clement, United States Bankruptcy Judge for the Eastern District of California, sitting by designation.

2

adversary proceeding to except from discharge the state court judgment entered in their favor.  11 U.S.C. § 523(a)(2), (6).[1] Armed with the state court judgment and asserting issue preclusion, the sisters obtained a summary judgment excepting their debt from discharge.

The brother appeals the order granting summary judgment and appeals the order denying his motion to vacate the summary judgment order.  He argues that the state court did not make sufficient findings from which the bankruptcy court could apply issue preclusion.  He also argues that his post-summary judgment appeal of an amended judgment correcting a clerical error in the underlying judgment, which had been otherwise long since final, precluded the bankruptcy court from applying issue preclusion. We disagree and AFFIRM.

## FACTS

The appellant is Azizolah Javahery ("Azizolah"); appellees are his younger sisters, Soraya Javaheri-Leitner ("Soraya") and Simin Javahery-Khojastegan ("Simin") (collectively "the sisters").[2]

**A.    The Sisters' State Court Action**

Starting with Azizolah, the siblings immigrated to the

---

[1]  Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  All "Civil" references are to the Federal Rules of Civil Procedure, Rules 1-86.

[2]  Because the parties share a common surname, the panel refers to the parties by their given names.  No disrespect is intended.

3

United States from Iran. Because of Azizolah's greater familiarity with business affairs in the United States and his culturally assigned role as head of the family, the sisters deposited with Azizolah personal property and hundreds of thousands of dollars for investment on their behalf and for safekeeping. By way of example, Simin deposited with Azizolah $300,000, which she had earned by working as a dentist in Iran. Soraya entrusted Azizolah with antiques, gold and silver jewelry and eight years' earnings.

When Azizolah refused to return the sisters' personal property and money, the sisters brought an action against him in state court. Their complaint alleged causes of action for breach of contract, conversion (two counts), fraud (two counts), accounting, breach of fiduciary duty, constructive trust, interference with contractual relations, and fraudulent transfers.

After trial, the state court issued a lengthy Statement of Decision, which contained three main parts: (1) determining Azizolah's liability; (2) fixing compensatory damages; and (3) deciding whether punitive damages should be awarded and the amount of those damages. As to the liability component of the action, as pertinent here, the state court found for the sisters on each of their causes of action, including conversion and fraud. As to conversion, the state court found:

> Defendant [Azizolah] wrongfully converted certain items of antiques, silver and gold jewelry that were brought by Soraya to the United States for her own use and ownership. Soraya brought $3500 that she had saved as well as antiques including a handmade rung [sic], sterling silver and handmade artwork from the City of Esfahan. Plaintiff Soraya estimated the weight of the

4

silver to be 30 to 40 kilograms. Besides the silver, Plaintiff Soraya also brought gold jewelry, including 18 karat gold earrings, bracelet, necklace and rings estimated to be valued at $50,000-$60,000.[3]

With respect to fraud,[4] the court stated, "Because Defendant [Azizolah] took various actions to affirm his trustworthiness to his younger sisters, Defendant was able to perpetrate the fraud upon them until 2006."

As to the amount of compensatory damages, the state court made findings rooted in the conversion causes of action. It awarded Soraya $459,959 and Simin $571,570. The state court's treatment of the damages issue was confined to four paragraphs:

> Plaintiff Soraya testified that Defendant had wrongfully converted antiques, gold, and silver which belonged to her and were valued at $50,000-$60,000.00. The Court finds that the Plaintiff's testimony was credible.

> California Civil Code Section 3336 states in pertinent part that a plaintiff may receive as damages for conversion, "[t]he value of the property at the time of the conversion, with the interest from that time [. . .] and [s]econd - [a] fair compensation for the time and money properly expended in pursuit of that property."

> Plaintiff's expert forensic account [sic] Mr. Jack Zuckerman testified that using the legal interest rate of 10 percent, Plaintiff Soraya suffered damages of approximately $346,123.00 through September 20, 2009 for the cash damages. This does not include damages through the date of the adjudication of the matter, nor

---

[3] The record is unclear whether the court's findings regarding conversion arose from the second cause of action (conversion) or the tenth cause of action (theft/conversion/embezzlement of plaintiff's inheritance).

[4] The Statement of Decision addresses only the third cause of action for fraud. For reasons not clear, the fourth cause of action, also for fraud, was not addressed in the Statement of Decision.

5

does it include the value of the antiques and silver jewelry through the date of the adjudication of this matter. The amount of damages for the antiques and silver that Plaintiff Soraya brought from Iran, at a legal rate of interest, would be $113,836.00. Thus, in terms of actual damages alone, the Court finds that Plaintiff Soraya suffered actual [damages] in the amount of $459,959.00.

As to Plaintiff Simin, the Court finds that using a legal interest rate of 10 percent, Plaintiff Simin has suffered $571,570.00 in actual damages.

As to the punitive damages, the Statement of Decision also made findings of malice, oppression and fraud, as required by Cal. Civ. Code § 3294, to support the imposition of punitive damages. It stated, "The Court found by clear and convincing force that punitive damages are warranted in this matter finding that Defendant Azizolah Javahery acted with **'malice, oppression and fraud'** given all his actions to wrongfully take the assets of his two sisters . . . ." (emphasis added). The state court explained, "Defendant knew that these funds and items of personal property were the livelihood of his sisters, and the fruits of their difficult labor. Despite that, he waged a systematic campaign of fraud against his sisters, in order to deprive them of their hard earned assets."

The court's findings as to the amount of punitive damages were cursory. It stated: "As punitive damages are to be awarded in an amount that will deter and punish the Defendant, punitive damages are awarded by this Court in the amount of $350,000.00 for each Plaintiff."

Thereafter, the state court entered judgment for the sisters. As relevant here, the judgment stated:

AS TO PLAINTIFF SIMIN JAVAHERY AND SORAYA JAVAHERY'S

6

SECOND CAUSE OF ACTION FOR CONVERSION:

The Court rules that Plaintiffs should prevail on their second cause of action for conversion.

**AS TO PLAINTIFF SIMIN JAVAHERY AND SORAYA JAVAHERY'S THIRD AND FOURTH CAUSE OF ACTION FOR FRAUD:**

**The Court rules that Plaintiffs should prevail on their second cause of action for conversion [sic].**

**The Court rules that punitive damages are warranted . . .**

AS TO PLAINTIFF SIMIN JAVAHERY AND SORAYA JAVAHERY'S TENTH CAUSE OF ACTION FOR THEFT/CONVERSION/EMBEZZLEMENT OF PLAINTIFF'S INHERITANCE:

The Court rules that Plaintiffs should prevail on their tenth cause of action for theft/conversion/embezzlement of Plaintiff's inheritance.

AS TO DAMAGES, PLAINTIFFS SHALL TAKE THE FOLLOWING:

AS TO SORAYA JAVAHERI:

$346,123.00 (Cash Damages At Legal Interest of 10%)

$113,836 (Damages for Antiques and Silver at Legal Interest Rate of 10%)

$350,000.00 (Punitive Damages)

AS TO SIMIN SORAYA JAVAHERY:

$571,570.00 (Cash Damages at Legal Interest Rate of 10%)

$350,000.00 (Punitive Damages)

(emphases added).

After this judgment was entered, neither side appealed.

**B.   Azizolah's Bankruptcy and the Sisters' Adversary Proceeding**

Almost three years after the state court entered judgment, Azizolah filed a Chapter 7 bankruptcy, and the sisters responded by filing this adversary proceeding to except from discharge Azizolah's debt to them.  11 U.S.C. § 523(a)(2), (6).

The sisters then filed a motion for summary judgment,

7

arguing that the state court judgment together with the doctrine of issue preclusion entitled them to judgment. Azizolah opposed, arguing that the state court did not find that he committed fraud. Believing that the state court judgment contained a clerical error and that the Statement of Decision demonstrated a clear intent to find fraud, the bankruptcy court applied the doctrine of issue preclusion and granted summary judgment for (1) Soraya in the amount of $113,836 as arising from nondischargeable conversion and (2) each sister in the amount of $350,000 arising from a finding of fraud for purposes of punitive damages under Cal. Civ. Code § 3294. The bankruptcy court found the record inadequate to award further damages and denied the remainder of the motion for summary judgment.

**C.   Azizolah's Motion to Amend the State Court Judgment**

After the bankruptcy court granted summary judgment and three years after the entry of judgment by the state court, Azizolah moved the state court to correct clerical mistakes in the judgment, noting that the judgment incorrectly memorialized the findings in the Statement of Decision, describing erroneously the third and fourth causes of action as for conversion and stating that the punitive damages award arose from "the entire complaint," rather than the third and fourth causes of action for fraud (mischaracterized as conversion in the judgment). The sisters opposed Azizolah's efforts. Consistent with the bankruptcy court's interpretation of the original judgment, the state court granted the motion to correct the judgment as to the third and fourth causes of action to add fraud, but otherwise denied the motion. As in the original judgment, however, the

8

amended judgment appended the sisters' entitlement to punitive damages to the fraud cause of action.

An amended judgment was entered. As corrected, in the pertinent part the judgment now reads:

> <u>AS TO PLAINTIFF SIMIN JAVAHERY AND SORAYA JAVAHERY'S THIRD AND FOURTH CAUSE OF ACTION FOR FRAUD:</u>
>
> The Court rules that Plaintiffs should prevail on their second cause of action for fraud.
>
> The Court rules that punitive damages are warranted . . . .

Azizolah's appeal to the California Court of Appeals followed. That appeal remains unresolved.

**D.   The Sisters' Motion for Judgment under Civil Rule 54(b) and Azizolah's Motion to Vacate the Order Granting Summary Judgment**

Before Azizolah's appeal could be resolved, the sisters moved to dismiss the remainder of their adversary complaint and to enter judgment in their favor based on the bankruptcy court's order (partially) granting summary judgment. See Fed. R. Civ. P. 54(b), incorporated by Fed. R. Bankr. P. 7054. The court granted the sisters' motion, dismissed their remaining claims and entered judgment for them excepting their judgment from discharge.

Armed with the unresolved appeal from the state court order correcting the judgment, Azizolah requested the bankruptcy court to vacate the order granting the summary judgment, arguing that issue preclusion may not be applied where an appeal is pending of the prior judgment for which preclusive effect is sought. The sisters opposed, and the court denied the motion.

This appeal followed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334, 157(b)(2)(I). This court has jurisdiction under 28 U.S.C. § 158.

## ISSUES

Three issues dominate this appeal:

1. Whether the bankruptcy court abused its discretion by refusing to vacate an order that was based on the issue-preclusive effect of an otherwise final state court judgment, where the state court had later entered an amended judgment to correct a clerical error and an appeal challenging the corrected judgment remained unresolved;

2. Whether the bankruptcy court erred in granting summary judgment under 11 U.S.C. § 523(a)(2)(A) based on issue preclusion; and

3. Whether the state court's conversion judgment made sufficient findings of willfulness and maliciousness under 11 U.S.C. § 523(a)(6) for the bankruptcy court to apply issue preclusion to that judgment in rendering summary judgment in favor of the judgment creditors.

## STANDARDS OF REVIEW

This court reviews a denial of a Civil Rule 60(b) motion for abuse of discretion. Sch. Dist. No. 1J v. AC & S, Inc., 5 F.3d 1255, 1262 (9th Cir. 1993). A trial court abuses its discretion if it does "not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." S.E.C. v. Coldicutt, 258 F.3d 939, 941 (9th Cir. 2001).

Summary judgments are reviewed de novo. Conestoga Serv.

Corp. v. Executive Risk Indem., Inc., 312 F.3d 976, 980 (9th Cir. 2002).

Issue preclusion requires a two-step review. First, whether issue preclusion is available is reviewed de novo. Krishnamurthy v. Nimmagadda (In re Krishnamurthy), 209 B.R. 714, 718 (9th Cir. BAP 1997), aff'd, 125 F.3d 858 (9th Cir. 1997). Second, "[i]f issue preclusion is available, the decision to apply it is reviewed for abuse of discretion." Lopez v. Emergency Restoration, Inc. (In re Lopez), 367 B.R. 99, 103 (9th Cir. BAP 2007); Dias v. Elique, 436 F.3d 1125, 1128 (9th Cir. 2006).

**DISCUSSION**

**I.   Legal Standards**

The court shall grant summary judgment where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), incorporated by Fed. R. Bankr. P. 7056. "The court views the evidence in the light most favorable to the non-moving party to determine if there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law." Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014).

In federal courts, the preclusive effect of a state court judgment is decided by the law of the state in which the judgment was rendered. Gayden v. Nourbakhsh (In re Nourbakhsh), 67 F.3d 798, 800 (9th Cir. 1995). California has five prerequisites to the availability of issue preclusion:

First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been

11

actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001).

The party seeking to employ issue preclusion bears the burden of showing its applicability. Vella v. Hudgins, 20 Cal. 3d 251, 257 (1977). In deciding this issue, the court may consider the entire record, including the rendering court's Statement of Decision. Restatement (Second) of Judgments § 27 cmt. f (1982); In re Lopez, 367 B.R. at 105 (statement of decision); Grenier v. Roback (In re Grenier), BAP No. NC-14-1396-KiTaD, 2015 WL 3622712, at *2-3, *7 (9th Cir. BAP June 10, 2015) (same).

**II. Motion to Vacate**

Civil Rule 60 allows the bankruptcy court to vacate an order where "it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable," or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(5), (6), incorporated by Fed. R. Bank. P. 9024.

The crux of Azizolah's argument is that the bankruptcy court abused its discretion in declining to vacate the order granting summary judgment against him because the state court judgment, which formed the basis of the bankruptcy court's order, lost its finality when he later appealed the amended judgment.

No known case directly addresses whether issue preclusion may be  applied under this factual circumstance under California

12

law.   California law on issue preclusion provides for two kinds of attacks on a judgment, i.e., direct attacks (appeals) and collateral proceedings that assail a judgment.  And it treats the two attacks differently when deciding whether a judgment is final for the purposes of issue preclusion.  This disparate treatment suggests that an appeal from a judgment amended to correct a clerical error does not impact finality for issue preclusion purposes.

As defined by state law, issue preclusion applies only to judgments that are final and that are not subject to a direct attack such as an appeal.  People v. Bank of San Luis Obispo, 159 Cal. 65, 82-83 (1910) (noting a "broad difference" between judgments subject to "direct appeal," which are not final, and judgments subject to "collateral proceedings," which are final (quoting Spanagal v. Dellinger, 38 Cal. 278, 284 (1869) (Sawyer, C.J., concurring)));  see also Sandoval v. Super. Ct., 140 Cal. App. 3d 932, 936-37 (1983); Cal. Code Civ. Proc. § 1049.  A judgment is not final for purposes of issue preclusion while an appeal remains pending or while the period for filing an appeal has not yet expired.  Kay v. City of Rancho Palos Verdes, 504 F.3d 803 (9th Cir. 2007) (applying California law); Franklin & Franklin v. 7 Eleven Owners for Fair Franchising, 85 Cal. App. 4th 1168, 1174 (2000); see also Cal. R. of Court 8.104(a)(1)(C) (ordinarily an appeal must be filed not later than 180 days after entry of judgment).  The deadline to file an appeal is jurisdictional.  Van Beurden Ins. Servs. Inc. v. Customized Worldwide Weather Ins. Agency, Inc., 15 Cal. 4th 51, 56 (1997).  It cannot be extended or reset by entering a subsequent judgment

13

or appealable order that renders the same result. Laraway v. Pasadena Unified Sch. Dist., 98 Cal. App. 4th 579, 583 (2002). Once an appeal has concluded or the time to do so has expired, the judgment becomes final.

In contrast, judgments that are the subject of an unresolved collateral attack, those "not in the direct line of the judgment," such as motions for a new trial and actions to annul a judgment, remain final. Bank of San Luis Obispo, 159 Cal. at 82-83; see also Restatement (Second) of Judgments § 13 cmt. f (1982). More to the point, an unresolved appeal from an unsuccessful collateral attack does not bar application of issue preclusion. In re McNeil's Estate, 155 Cal. 333, 337 (1909) (finding judgment was final for issue-preclusion notwithstanding unsuccessful action to annul the judgment and unexpired time for appeal). It is only if and when a collateral attack actually succeeds in overthrowing the judgment that the judgment loses force and issue-preclusive effect. Harris v. Barnhart, 97 Cal. 546, 551 (1893).

Juxtaposed, these authorities reveal a clear line of demarcation. While an appeal remains pending or during the period in which an appeal might be filed, a judgment is not final. After that, the judgment is final, and an unresolved effort to vacate or materially modify the judgment does not affect finality, unless and until it actually overturns the judgment.

As a result, Azizolah's failure to appeal the original and underlying judgment and the expiration of his time to do so means that the judgment is final. Its finality, moreover, is not

14

impacted by the correction of the clerical error in the judgment and his now pending appeal of the amended judgment.

A narrow exception to the finality rule may exist for amended judgments that substantially change the original judgment. An amended judgment reopens a party's right to appeal only if the amended judgment "substantially modifies" the original judgment. Ellis v. Ellis, 235 Cal. App. 4th 837, 843 (2015). A "substantial modification" is one that "materially affects the rights of the parties." Sanchez v. Strickland, 200 Cal. App. 4th 758, 765 (2011). A substantially modified judgment supersedes the original judgment and a new period to appeal commences. Neff v. Ernst, 48 Cal. 2d 628, 634 (1957). By contrast, amendments that rectify clerical errors and do not involve the exercise of judicial discretion do not result in a new and appealable judgment.[5] Stone v. Regents of Univ. of Cal., 77 Cal. App. 4th 736, 744-45 (1999). And the aggrieved party's appeal period runs from the date of entry of the original judgment, and not the date of entry of the amended judgment. Id.

If California law recognizes such an exception, it is not applicable here. The amended judgment that is the subject of Azizolah's appeal merely conformed the judgment to the terms of the state court's Statement of Decision. It did not materially affect the rights of the parties or substantially modify the original judgment. Because it rectified only a clerical error in

---

[5] Unlike the limited time for filing an appeal, a trial court may correct a clerical error at any time. Cal. Code Civ. P. § 473(d); Ames v. Paley, 89 Cal. App. 4th 668, 572 (2001); In re Marriage of Kaufman, 101 Cal. App. 3d 147, 151 (1980).

15

the original judgment, the amended judgment does not fall within this exception to the finality rule for judgments. Therefore, the amended judgment never restarted the deadline for an appeal of the original judgment, and did not diminish the preclusive effect of the original judgment.

For these reasons, the original state court judgment was final for the purposes of issue preclusion, a fact not altered by Azizolah's later appeal of the order amending the judgment, and the bankruptcy court did not abuse its discretion in denying the motion to vacate.

**III. Motion for Summary Judgment**

**A. Availability of Issue Preclusion**

**1. Section 523(a)(2) Fraud**

Section 523(a)(2)(A) excepts from discharge debts for money, property, or services "to the extent obtained by false pretenses, a false representation or actual fraud." 11 U.S.C. § 523(a)(2)(A). The creditor must demonstrate by a preponderance of the evidence: "(1) the debtor made . . . representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; [and] (5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made." Am. Express v. Hashemi (In re Hashemi), 104 F.3d 1122, 1125 (9th Cir. 1997).

"The elements of fraud under § 523(a)(2)(A) match the elements of common law fraud and actual fraud under California law." Lee v. Tcast Commc'n, Inc. (In re Jung Sup Lee), 335 B.R.

16

130, 136 (9th Cir. BAP 2005) (quoting Younie v. Gonya (In re Younie), 211 B.R. 367, 373-74 (9th Cir. BAP 1997), aff'd 163 F.3d 609 (9th Cir. 1998)). As a result, a proper finding of fraud by a California state court satisfies the identity-of-issue requirement under the preclusion doctrine.

Azizolah advances four arguments against the finding of nondischargeable fraud under § 523(a)(2)(A) based on issue preclusion. First, he argues that the state court judgment did not render judgment based on fraud. The argument assumes that the bankruptcy court could not properly consider the state court's Statement of Decision. This panel disagrees. Resort to the Statement of Decision is appropriate when applying issue preclusion. In re Lopez, 367 B.R. at 105; In re Grenier, 2015 WL 3622712, at *2-3, *7 (9th Cir. BAP June 10, 2015). Here, the Statement of Decision specifically found that Azizolah defrauded his younger sisters. Moreover, though containing a clerical error, the original judgment fairly considered also found fraud on Azizolah's part. As a consequence, the bankruptcy court properly found that the state court judgment did, in fact, make a finding of fraud.[6]

Second, Azizolah argues that the record is insufficient to support issue preclusion on the element of damages under § 523(a)(2)(A) because the state court awarded damages only for

---

[6] Hindsight strengthens the bankruptcy court's finding. After the bankruptcy court granted summary judgment, Azizolah moved to clarify the state court judgment because it contained a clerical error. Consistent with the bankruptcy court's reading, the state court corrected the clerical error and amended the judgment to include fraud.

17

conversion and because the judgment did not specify whether it found entitlement to punitive damages based on malice, oppression **or** fraud. See, e.g., <u>Plyam v. Precision Dev. LLC (In re Plyam)</u>, 530 B.R. 456, 465 (9th Cir. BAP 2015) (under Cal. Civ. Code § 3294(a), only intentional malice or fraud will support a finding under § 523(a)(6)). But the record is adequate in this regard. The state court found that Azizolah acted with "malice, oppression **and** fraud." (emphasis added). Therefore, the state court awarded punitive damages for fraud, and that finding satisfies the damages elements of § 523(a)(2)(A).

Third, Azizolah argues that actual damages are an absolute predicate to an award of punitive damages. See <u>Kizer v. Cty. of San Mateo</u>, 53 Cal. 3d 139, 147 (1991); <u>Mother Cobb's Chicken Turnovers, Inc. v. Fox</u>, 10 Cal. 2d 203, 206 (1937). And since the state court did not **expressly** award damages for fraud, an award of punitive damages based on a finding of fraud was also not possible.[7]

California Civil Code § 3294(a) authorizes punitive damages "in addition to the actual damages." Carefully parsed, California decisional law does not require that there be an express award of actual damages to support an award of punitive damages, but rather that the plaintiff has suffered injuries from a tortious act, even if compensatory damages were not awarded. Compare <u>Clark v. McClurg</u>, 215 Cal. 279, 282-83, 285 (1932)

---

[7] One might wonder why punitive damages might not be sustained under the conversion component of the judgment. The simple answer is that the state court only awarded punitive damages under the fraud portion of the judgment.

18

(upholding $5,000 award of punitive damages, even though no general damages were awarded), and Gagnon v. Continental Cas. Co., 211 Cal. App. 3d 1598, 1603 n.5 (1989) (even though compensatory damages were not available, the plaintiff was entitled to a jury instruction that punitive damages bear a reasonable relationship to the "actual harm or injury," rather than to "actual damages"), and Wayte v. Rollins Int'l, Inc., 169 Cal. App. 3d 1, 16 (1985) ("All that is required is proof of a tort which is of such a nature to warrant imposition of punitive damages."), with Berkley v. Dowds, 152 Cal. App. 4th 518 (2007) (because compensatory damages were not recoverable, plaintiff could not pursue punitive damages), and Cheung v. Daley, 35 Cal. App. 4th 1673 (1995) (punitive damages not available where jury expressly determined that plaintiffs entitled to $0.00 compensatory damages).

The case of Topanga Corp. v. Gentile, 249 Cal. App. 2d 681 (1967), is particularly illuminating. In that case, the plaintiff corporation sought equitable relief in the form of reformation and cancellation of shares of stock from an allegedly fraudulent transaction involving defendant stock promoters. Punitive damages were requested but compensatory damages were not sought or awarded. The trial court granted equitable relief but denied punitive damages apparently because compensatory damages were not sought or awarded. On that ground, the Court of Appeals remanded the matter for further hearings stating,

> However, the fact that plaintiffs were not given a
> grant of monetary damages of a certain amount is not
> determinative. Plaintiff was indeed damaged by
> defendants' fraud for defendants had, as the result of
> the fraud, received stock in an amount not commensurate

19

with the value of their contribution to the corporation. . . . The requirement of "actual damages" imposed by section 3294 is simply the requirement that a tortious act be proven if punitive damages are to be assessed.

Id. at 691.

Here, there is no question that the state court found compensable fraud. What the state court did not do was to articulate its findings artfully or to differentiate compensatory damages for that fraud from other relief awarded.

Fourth, Azizolah argues that the amount of nondischargeable damages attributable to fraud cannot be ascertained from the record. To the extent that the bankruptcy court found punitive damages nondischargeable, this panel disagrees. The bankruptcy court found that the award of punitive damages of $350,000 to each sister was sufficiently tied to fraud and granted summary judgment as to those damages.

An award of punitive damages under California Civil Code § 3294(a) based on a finding of fraud is nondischargeable under 11 U.S.C. § 523(a)(2). Cohen v. de la Cruz, 523 U.S. 213, 218 (1998) ("The most straightforward reading of § 523(a)(2)(A) is that it prevents discharge of 'any debt' respecting 'money, property, services, or . . . credit' that the debtor has fraudulently obtained, including treble damages, assessed on account of the fraud."); In re Plyam, 530 B.R. at 465 (only intentional malice or fraud under Cal. Civ. Code § 3294(a) will support a finding of nondischargeability under 11 U.S.C. § 523(a)(6)).

Here, the underlying state court judgment awarded punitive damages based on a finding of **"malice, oppression and fraud."**

20

(emphasis added). As a result, the bankruptcy court's application of issue preclusion was not erroneous.

### 2. Section 523(a)(6) Willful and Malicious Injury

Section 523(a)(6) excepts from discharge debts for "willful and malicious injury" by the debtor to another. "Willful" means that the debtor entertained "a subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct." Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1208 (9th Cir. 2001); Carrillo v. Su (In re Su), 290 F.3d 1140, 1144 (9th Cir. 2002). Maliciousness is defined as "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) done without justification or excuse." Jercich, 238 F.3d at 1209; Thiara v. Spycher Bros. (In re Thiara), 285 B.R. 420, 427 (9th Cir. BAP 2002).

Debts incurred by conversion of another's property may be nondischargeable under § 523(a)(6). Del Bino v. Bailey (In re Bailey), 197 F.3d 997, 1000 (9th Cir. 1999). The elements of conversion in California are the creditor's ownership or right to possession of property at the time of conversion, a wrongful act or disposition of that property by another, and damages. In re Thiara, 285 B.R. at 427. Proof of conversion under state law is a necessary but not sufficient basis to deny discharge under § 523(a)(6). Id. A creditor must also demonstrate that the injury was willful and malicious. Id.

Azizolah argues that the state court award of conversion damages to Soraya in the amount of $113,836 was not supported by the requisite findings of intent. While the state court did not

21

use the words "willful" or "malicious," the record contains sufficient findings of intent to support such findings under § 523(a)(6). The most telling finding as to willfulness was that Azizolah held the subjective intent to injure:

> Defendant knew that these funds and items of personal property were the livelihood of his sisters, and the fruits of their difficult labor. Despite that, **he waged a systematic campaign of fraud** against his sisters, in order to deprive them of their hard earned assets. Defendant never showed any concern or mercy for the rights of his sisters, but rather **took every possible step to ensure their financial ruin**.

(emphases added).

Additional findings buttress the conclusion that Azizolah believed that injury to his sisters was substantially certain to occur from his actions. First, he used his position of authority, i.e., his culturally assigned role as head of the family, to obtain control of his sisters' personal property and money. He knew that his sisters would not defy him and would completely believe anything he told them. He engaged in violence against them.

Second, over a period of years he intentionally injured his sisters by falsely representing that he would invest monies and hold properties for their behalf, and he would return these monies and assets when requested. Soraya gave Azizolah antiques, gold and silver jewelry, as well as large amounts of money, for investment on her behalf and for safekeeping. The silver weighed 30 to 40 kilograms. The gold jewelry was worth $50,000 to $60,000. Soraya deposited all of her earnings for 8 years into a joint account with Azizolah. He repeatedly told Soraya that he would hold and invest these funds on her behalf. But Azizolah

22

never intended to keep his promises and "long planned to claim ownership" to both his sisters' funds. He exercised "complete control over his sister's financial affairs." He placed his name on every bank account holding his sisters' money and retained the interest paid on those accounts.

Third, he took monies that were the sisters' livelihood and the fruits of their difficult labors, as well as monies earmarked for them by their parents. For example, when the siblings' parents died, Azizolah took for himself the inheritance his parents intended to be jointly divided among the siblings. He also lied about this fact. He gave some of those funds to a third party and used some of the funds to pay for his defense of the sisters' state court action against him. A similar event occurred when the siblings' father sent Azizolah money for Soraya's tuition, and Azizolah withheld it from her.

Fourth, Azizolah utilized deception to hide his acts and make collection efforts by the sisters more difficult. For example, with respect to the conversion causes of action, he denied indebtedness to the sisters. And when the sisters brought suit against him, he engaged in fraudulent transfers to hide the assets and prevent the recovery of the assets.

The state court also found the underpinnings of malice. Conversion committed over a period of years and motivated by the desire to cause financial ruin easily demonstrates a wrongful act done intentionally. This wrongful act would necessarily cause injury. And it did cause injury. The factual grounds for the award of punitive damages eliminate justification or excuse. As a result, this panel has no difficulty in finding that Azizolah's

23

actions were wrongful, intentional, injurious and unjustified.

Accordingly, the bankruptcy court did not err.

**B.   Decision to Apply Issue Preclusion**

If available, the decision to apply issue preclusion falls within the broad discretion of the trial court. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331 & nn. 14-16 (1979); In re Lopez, 367 B.R. at  107 (applying California law).  That decision always involves "a measure of discretion and flexibility."  In re Lopez, 367 B.R. at 107 (citing Restatement (Second) of Judgments, Title E, Introductory Note (1980)); Restatement (Second) Judgment § 28 (specifying circumstances where application may not be appropriate).

Azizolah argues that even if issue preclusion was available, the bankruptcy court should have declined to apply issue preclusion to this case.  Stated more specifically, he might argue that the bankruptcy court should have declined to apply issue preclusion for two reasons.  First, because the state court judgment was sufficiently nonspecific as to the basis of its findings or the amount of damages attributable to nondischargeable causes of action, Azizolah lacked incentive to prosecute an appeal in the state court.

Lack of "an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action" is a basis for the bankruptcy court to refuse application of issue preclusion. Restatement (Second) of Judgments § 28(5)(c).  Refusal to give preclusive effect to a final judgment requires a "compelling showing of unfairness," and a showing that the first decision was "patently erroneous" is insufficient. Id. at cmt. j.  Examples

24

of such compelling circumstances include a judgment that was the product of concealed facts, the disability of a party that has since been resolved, a jury verdict that was the result of compromise, or a judgment based on a small amount in controversy compared to the amount in dispute in the action for which issue preclusion is sought. Id.

Here, Azizolah had sufficient incentive to challenge the adverse judgment to support application of issue preclusion. The state court awarded the sisters upwards of $1.7 million against him. Measured by any standard, Azizolah had a strong incentive to raise any and all grounds for overturning or reducing the judgment against him. The mere fact that the state court judgment was flawed does not preclude the use of issue preclusion. Samuels v. CMW Joint Venture (In re Samuels), 273 Fed. App'x 691, 693-94 (9th Cir. 2008); Lucido v. Super. Ct., 51 Cal. 3d 335, 344-45 (1990). Azizolah's decision not to prosecute an appeal of the original judgment may have been a calculated decision to leave the original judgment vague or flawed so as to prevent application of issue preclusion. In contrast, an appeal of the original judgment might have resulted in a remand with instruction to correct the judgment, foreclosing arguments against issue preclusion.

Second, Azizolah might argue that as of the date of the hearing on the motion to vacate, the appeal of the judgment amended to correct a clerical error changed the complexion of the case sufficiently that the court should have declined to apply issue preclusion.

An "intervening change in the applicable legal context" is a

basis to refuse to apply issue preclusion. An intervening change in the relative legal climate may justify the court's actions if that change would "impose on one of the parties a significant disadvantage or confer on him a significant benefit, with respect to his competitors." Restatement (Second) of Judgments § 28 cmt. c.

Here, the pendency of Azizolah's post-summary judgment appeal of an amended judgment correcting a clerical error in the underlying judgment offers neither the sisters, nor Azizolah, disadvantage or benefit with respect to the other. Rather, it leaves their comparative positions in the adversary proceeding unchanged, and the bankruptcy court did not abuse its discretion in refusing to find an intervening change in the legal context.

For these reasons, we find that the bankruptcy court did not abuse its discretion in deciding to apply issue preclusion.

**CONCLUSION**

Finding no error in the bankruptcy court's order denying Azizolah's motion to vacate or its order granting summary judgment, we AFFIRM.